[No. 58207-6. En Banc. July 16, 1992.]

CERTIFICATION FROM THE UNITED STATES
DISTRICT COURT FOR THE WESTERN
DISTRICT OF WASHINGTON
IN

BIRD-JOHNSON CORPORATION, *Plaintiff*, v. DANA
CORPORATION, *Defendant*.

424

*Culp, Guterson & Grader,* by *Robert D. Stewart* and *Bruce W. Hilyer,* for plaintiff.

*Perkins Coie,* by *William A. Gould* and *Emilie M. Ogden,* for defendant.

*Rodney L. Brown, Jr., Alexandra K. Smith,* and *Loren R. Dunn* on behalf of Citizens Toxics Cleanup Campaign and the Washington Environmental Council, amici curiae for plaintiff.

DURHAM, J. — In a federal action, plaintiff Bird-Johnson Corporation (Bird-Johnson) seeks contribution from defendant Dana Corporation (Dana) for the environmental cleanup of a marine propeller manufacturing site. The United States District Court has certified the following question to us:

> Can the plaintiff maintain a private right of action for contribution under the MTCA [Model Toxics Control Act (MTCA),

RCW 70.105D] for the recovery of remedial action costs (as that phrase is defined in the MTCA)?

We answer that question in the negative.[1]

Bird-Johnson and Dana are past owners and operators of a propeller plant near Seattle's Lake Union. Dana, or a subsidiary company, owned and operated the plant from 1972 to 1981. In 1986, following a few intervening owners, Bird-Johnson purchased the plant, and operated it for almost 3 years. Bird-Johnson sold the site in October 1989 to William R. Matthews and Robin M. Farwell. As part of the sales contract, Bird-Johnson agreed to clean up any hazardous substances on the property. Bird-Johnson alleges that the environmental audit it commissioned revealed soil and groundwater contamination with petroleum products, PCBs and carbon tetrachloride, which were partly the result of Dana's operation of the plant. Bird-Johnson claims that it has incurred remedial action costs in investigating and cleaning up the plant.

In June 1990, the Washington Department of Ecology (DOE) served "Proposed Finding of Potential Liability Status" letters on Bird-Johnson, Dana, and other former owners of the site. DOE has not brought any enforcement action under the MTCA with respect to the plant site, nor has it declared Bird-Johnson or Dana to be a potentially liable party under the MTCA. Bird-Johnson alleges that it met with the DOE and agreed in May of 1990 to take independent remedial actions in accord with the applicable DOE regulations.

In December 1990, Bird-Johnson filed suit against Dana in federal district court, alleging six causes of action, including a claim under the MTCA for contribution. Dana moved to dismiss Bird-Johnson's contribution action for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Judge Thomas

---

[1]The dissent would reach the additional question of whether plaintiffs have a right of contribution under RCW 4.22. However, we do not have jurisdiction to go beyond the specific question posed by the federal court. *See* RCW 2.60; RAP 16.16.

S. Zilly denied defendant's motion without prejudice and certified the question of contribution under the MTCA to this court.

The MTCA was originally adopted as Initiative 97 on the November 1988 general election ballot. It was designed "to raise sufficient funds to clean up all hazardous waste sites and to prevent the creation of future hazards due to improper disposal of toxic wastes into the state's land and waters." RCW 70.105D.010(2). To effectuate this purpose, the act establishes specific mechanisms whereby the DOE can investigate, declare "potentially liable persons",[2] and require the cleanup of hazardous waste sites. *See* RCW 70.105D.030; RCW 70.105D.050(1). The Attorney General is given the authority to enforce the DOE's orders. RCW 70-.105D.050.

Bird-Johnson first urges this court to find a private right of contribution in the express language of the initiative.[3] It points to the following section from the MTCA:

> A party who has resolved its liability to the state under this subsection shall not be liable for claims for contribution regarding matters addressed in the settlement. The settlement does not discharge any of the other liable parties but it reduces the total potential liability of the others to the state by the amount of the settlement.

RCW 70.105D.040(4)(d).

■■ Such a passing reference to the word "contribution" carries no independent significance. This language, by itself, is insufficient to create an MTCA-based right of contribution. It refers only to the interaction between the MTCA and other potential causes of action for contribution. *See, e.g.,* RCW 4.22.040; 42 U.S.C. § 9613(f)(1). In accord with our

---

[2]Under RCW 70.105D.020, "potentially liable person" is defined as "any person whom the department finds, based on credible evidence, to be liable under RCW 70.105D.040."

[3]The plaintiff and amicus would have this court apply a less rigorous standard for construing initiatives than statutes passed by the Legislature. However, it has long been the rule that "[i]nitiatives are to be interpreted according to the general rules of statutory construction." (Citations omitted.) *Spokane v. Taxpayers,* 111 Wn.2d 91, 97, 758 P.2d 480 (1988).

long-standing rule of statutory construction, we cannot proceed beyond the ordinary meaning of this language. *State v. Smith*, 117 Wn.2d 263, 270-71, 814 P.2d 652 (1991). Although the MTCA is "to be liberally construed to effectuate [its] policies and purposes", RCW 70.105D.910, this court will not countenance strained or unrealistic interpretations of the initiative's language. *Draper Mach. Works, Inc. v. Department of Natural Resources*, 117 Wn.2d 306, 315, 815 P.2d 770 (1991).

Bird-Johnson next argues that a right of contribution can be implied from the MTCA's broad remedial purposes. In assessing this argument, we are aided by reference to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA or Superfund Act), 42 U.S.C. § 9601 *et seq.*, and its 1986 reenactment, the Superfund Amendments and Reauthorization Act of 1986 (SARA). The MTCA was heavily patterned after these two federal statutes.[4] As such, federal cases interpreting similar language in CERCLA and SARA are persuasive, although not controlling, when interpreting the MTCA. *See Hoffer v. State*, 113 Wn.2d 148, 151, 776 P.2d 963 (1989).

Initially, CERCLA did not include any language establishing an express right of contribution. Nevertheless, some federal courts interpreted it to include a right of contribution. *See, e.g., Wickland Oil Terminals v. ASARCO, Inc.*, 792 F.2d 887 (9th Cir. 1986). Any confusion was resolved by SARA, which explicitly provided that "[a]ny person may seek contribution from any other person who is liable or potentially liable". 42 U.S.C. § 9613(f)(1).

It is noteworthy that these 15 words from SARA which created an express right of contribution were not inserted into the MTCA. The MTCA's drafters could easily have included language providing for contribution, especially since SARA provided a ready model, but they did not. The

---

[4]*See generally* Comment, *Through the Looking Glass: A Comparison of Covered Persons, Defenses, and Liability Under CERCLA and the Washington State Model Toxic Control Act of 1988 (Initiative 97, 1988 General Election)*, 25 Gonz. L. Rev. 253, 254 (1989-1990).

omission of these words is a clear indication that the MTCA's drafters did not intend to adopt CERCLA's more expansive contribution provision. *See Everett Concrete Prods., Inc. v. Department of Labor & Indus.*, 109 Wn.2d 819, 826, 748 P.2d 1112 (1988). We will not imply a private cause of action when the drafters of a statute evidenced a contrary intent; public policy is to be declared by the Legislature, not the courts. *See Burkhart v. Harrod*, 110 Wn.2d 381, 385, 755 P.2d 759 (1988). Obviously, the Legislature can amend the MTCA to include a right of contribution if it so desires.

■ Bird-Johnson also relies upon a DOE regulation which recognizes an MTCA-based right of contribution. WAC 173-340-550(5). An administrative agency, however, cannot modify or amend a statute by regulation. *State v. Thompson*, 95 Wn.2d 753, 759, 630 P.2d 925 (1981). When exercising its rule-making authority, an agency may draft only those rules which fit within the framework and policy of the applicable statute. RCW 34.05.570(3); *Kitsap-Mason Dairymen's Ass'n v. State Tax Comm'n*, 77 Wn.2d 812, 815, 467 P.2d 312 (1970). The rule in question creates a cause of action beyond that contained in the MTCA, and clearly exceeds the Department's authority to "[c]onduct, provide for conducting, or require potentially liable persons to conduct remedial actions . . . to remedy releases or threatened releases of hazardous substances." RCW 70.105D.030(1)(b). Stated simply, when statutory authority is lacking, DOE cannot create a new cause of action by fiat.

■ Finally, Bird-Johnson argues that Washington's contribution statute, RCW 4.22.040, offers an independent right of contribution, apart from any MTCA-based right. We do not reach this issue because the certified question only inquires about the availability of a right of contribution under the terms of the MTCA itself.

■ In sum, the answer to the certified question is "no". The language of the MTCA does not create an express right of

contribution, and an implied right of contribution is inappropriate where the drafters have evidenced a contrary intent.

DORE, C.J., and BRACHTENBACH, DOLLIVER, SMITH, and GUY, JJ., concur.

JOHNSON, J. (dissenting) — The majority concludes no right of contribution exists under The Model Toxics Control Act (MTCA), RCW 70.105D. I cannot agree. The majority's analysis overlooks many crucial considerations: (1) the MTCA was modeled after two federal statutes, *both* of which provide for a right of contribution; (2) the MTCA expressly provides for joint and several liability, which under Washington law creates a right of contribution; (3) language in the MTCA presupposes the existence of a right of contribution; and (4) recognition of a right of contribution furthers the remedial purposes of the MTCA. I would conclude a right of contribution exists under the MTCA.

The MTCA was patterned after two federal statutes: the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA),[5] and CERCLA's 1986 reenactment, the Superfund Amendments and Reauthorization Act of 1986 (SARA).[6] *See* Comment, *Through the Looking Glass: A Comparison of Covered Persons, Defenses, and Liability Under CERCLA and the Washington State Model Toxic Control Act of 1988 (Initiative 97, 1988 General Election)*, 25 Gonz. L. Rev. 253, 254 & n.8 (1989-1990) (noting that the liability provisions of the MTCA follow "almost word-for-word" from CERCLA and SARA); majority, at 427. Given the similarity in the provisions between the MTCA and these federal statutes, the federal statutes and their construction

---

[5]Pub. L. No. 96-510, 94 Stat. 2767 (1980) (codified at 42 U.S.C. § 9601 *et seq.*).

[6]Pub. L. No. 99-499, 100 Stat. 1613 (1986) (codified at 42 U.S.C. § 9601 *et seq.* and other provisions of the U.S.C.).

in the federal courts should be considered persuasive authority on the issue currently before us. *See Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n*, 112 Wn.2d 278, 283, 770 P.2d 624, 87 A.L.R.4th 627 (1989).

Although CERCLA in its original form did not expressly create a right of contribution, almost all federal courts held that a right of contribution existed. *See United States v. New Castle Cy.*, 642 F. Supp. 1258, 1262 (D. Del. 1986) (the courts are "in basic agreement" that a right to contribution exists under CERCLA); *Sand Springs Home v. Interplastic Corp.*, 670 F. Supp. 913, 916-17 (N.D. Okla. 1987) (referring to numerous courts supporting a right of contribution and only one distinguishable case to the contrary); *Colorado v. ASARCO, Inc.*, 608 F. Supp. 1484, 1491-92 (D. Colo. 1985) (citing many cases supporting a right of contribution and only one distinguishable case to the contrary); Note, *Contribution Under CERCLA: Judicial Treatment After SARA*, 14 Colum. J. Envtl. L. 267, 267 n.3, 275 n.40 (1989); Dubuc & Evans, Jr., *Recent Developments Under CERCLA: Toward a More Equitable Distribution of Liability*, 17 Envtl. L. Rep. 10197, 10200 (1987).

Moreover, the other model for the MTCA — SARA — expressly recognizes a right of contribution for response costs. 42 U.S.C. § 9613(f)(1). What we have then is a state statute patterned after two federal statutes, one of which expressly created a right of contribution and the other of which by judicial construction included this right. It would seem natural that if the drafters of the MTCA intended to deviate from the federal statutes and disallow contribution actions, they would have expressly stated this intent.

The majority does not reach this natural conclusion. Rather, it notes that the more recent federal legislation, SARA, expressly creates a right of contribution. The majority reasons that if the drafters of the MTCA had intended for a right of contribution to exist, they would have incorporated SARA's language into the state statute. See majority, at 427-28. I disagree with this reasoning. The majority has pointed to no other statutory language and to

no legislative history supporting its conclusion that the drafters' failure to include express language represented a specific intent to prohibit contribution actions. The more logical inference is that the drafters of the MTCA assumed the express language was not needed when the right existed as a matter of implication even without the express language. Accordingly, on this basis alone I would construe the MTCA as supporting a right of contribution.

Moreover, the other language of the MTCA presents additional evidence that the drafters intended for a right of contribution to exist. In at least two respects, the MTCA's language reveals an intent to create this right. First, language in the MTCA presupposes a right of contribution generally: "A party who has resolved its liability to the state under this subsection shall not be liable for claims for contribution regarding matters addressed in the settlement." RCW 70.105D.040(4)(d). This language at least suggests that claims for contribution may be brought under other circumstances, that is, when a party has not settled with the State.

Second, and more importantly, the drafters expressly created joint and several liability for remedial action costs:

> Each person who is liable under this section is strictly liable, *jointly and severally*, for all remedial action costs and for all natural resource damages resulting from the releases or threatened releases of hazardous substances. . . .

(Italics mine.) RCW 70.105D.040(2).

Under Washington law, jointly and severally liable parties may maintain contribution actions against one another. RCW 4.22.040(1).[7] Therefore, the MTCA's establishment of joint and several liability directly creates a right of contribution.

---

[7] The text of RCW 4.22.040(1) reads as follows:

A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. The basis for contribution among liable persons is the comparative fault of each such person. However, the

The majority refuses to take into account the clear mandate of RCW 4.22.040. The majority instead concludes the federal court's question precludes this court from analyzing any statute other than the MTCA. See majority, at 428. I cannot agree. The certified question does not require this court to analyze the MTCA in a vacuum.[8] If the MTCA calls for joint and several liability, which in turn directly gives rise to a right of contribution, can it really be said that a right of contribution does not exist under the MTCA?

One can only wonder how the federal court will respond to the majority's truncated analysis. The majority's analysis naturally raises the question whether RCW 4.22.040 *in conjunction with* the MTCA creates a right of contribution. Because this is a matter of state law interpretation, the federal court will likely have to certify another question to this court, this time making explicit what is already implicit in its current question. No good purpose is served by prolonging the litigation in this case.

Even as a simple matter of policy, it is difficult to understand why the majority strains to deny a right of contribution under the MTCA. A right of contribution furthers the MTCA's remedial purposes by expediting and facilitating environmental cleanups. This point is emphasized in an affidavit from the Director of the Department of Ecology:

> In order for private parties to have incentives to pursue independent remedial actions, it is essential that the judicial branch recognize a private right of contribution for independently incurred response costs. If the Model Toxics Control Act is interpreted to bar private claims for contribution, the effect could be to drastically reduce the number of independent

---

court may determine that two or more persons are to be treated as a single person for purposes of contribution.

The *Legislature's restriction of joint* and several liability in the 1986 tort reform act does not apply to actions relating to hazardous wastes or substances. *See* RCW 4.22.070(3)(a); *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 667-68, 771 P.2d 711, 780 P.2d 260 (1989).

[8]The majority implicitly recognizes as much when it looks to federal statutes in its analysis of the question; the majority does not explain why certain statutes, but not others, may be used in interpreting the MTCA.

remedial actions and thwart the statutory objective to clean up all hazardous waste sites in the state of Washington. In my experience as the Director, private parties are willing to take significant independent remedial actions, even where the responsibility for the hazardous waste condition is shared with other potentially responsible parties, provided that such private parties have a realistic opportunity to recover a fair share of the cost from other potentially responsible parties. If a right of contribution to enforce sharing of clean up and response costs is denied, the effect will be to seriously reduce and impede independent remedial actions.

Supplemental Record, Exhibit D, Attachment A, at 2.

Moreover, a right of contribution is advisable as a matter of policy in the context of joint and several liability. As one commentator has phrased this point,

[J]oint and several liability and contribution are companion rights. Indeed, fairness dictates that when a court holds parties jointly and severally liable for a hazardous waste release, one party should not bear the entire burden of the judgment while the other parties escape liability.

(Footnote omitted.) Note, *A Right of Contribution Under CERCLA: The Case for Federal Common Law*, 71 Cornell L. Rev. 668, 689 (1985-1986). The United States Supreme Court has noted similar policy concerns:

Recognition of the right [of contribution] reflects the view that when two or more persons share responsibility for a wrong, it is inequitable to require one to pay the entire cost of reparation, and it is sound policy to deter all wrongdoers by reducing the likelihood that any will entirely escape liability.

(Footnote omitted.) *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 88, 67 L. Ed. 2d 750, 101 S. Ct. 1571 (1981).

I would answer the certified question by holding that a right of contribution exists under the MTCA.

ANDERSEN, J., concurs with JOHNSON, J., with respect to the answer to the certified question.