943 P.2d 1358 (1997)
SENATE REPUBLICAN CAMPAIGN COMMITTEE, Appellant,
v.
The PUBLIC DISCLOSURE COMMISSION OF THE STATE OF WASHINGTON, Respondent.
No. 64346-6.
Supreme Court of Washington, En Banc.
Argued March 12, 1997.
Decided September 25, 1997.
*1360 Davis, Wright & Tremaine, Daniel Ritter, Seattle, Joseph Vance, Bellevue, for appellant.
Christine Gregoire, Attorney General, Thomas G. Holcomb, Jr., John M. Gerberding, Assistants, Olympia, for respondent.
*1359 ALEXANDER, Justice.
The central issue presented by this appeal is whether RCW 42.17.710, a statute which prohibits state legislators or persons acting on their behalf from soliciting or accepting campaign contributions during a so-called "legislative session freeze period," prohibited the Senate Republican Campaign Committee (SRCC) from seeking and accepting contributions to a fund to be used later for the benefit of then unknown individuals who will, in the future, seek election as Republicans to State Senate positions not held by incumbent Republican senators. We hold that the statute does not prohibit such activity because the beneficiaries of the fundraising do not fall within the statutory definition of "candidate." We hold, however, that a material fact question exists as to whether the funds solicited by the SRCC were also intended to inure to the benefit of persons who fall within the statutory definition of the term candidate. Consequently, we reverse the superior court's grant of partial summary judgment in favor of the Public Disclosure Commission (PDC) and remand for trial.
In 1972, the voters of this state passed Initiative 276 (Laws of 1973, ch. 1, § 1), which, among other things, regulated the financing of political campaigns. The measure, later codified as RCW 42.17, established the PDC and denominated it as the agency to enforce the various requirements of the Campaign Financing Act (Act). RCW 42.17.350; .360. Specifically, the PDC was given authority to investigate alleged violations of the Act and to report any such alleged violations to appropriate law enforcement authorities. RCW 42.17.360(5). By later amendment, the PDC was given additional authority to determine whether the Act had been violated and to issue orders requiring violators to cease and desist from the activities constituting a violation or, alternatively, to impose other remedies, including civil penalties. RCW 42.17.395.
In 1992, Washington's voters approved Initiative 134, commonly referred to as the Fair Campaign Practices Act. Laws of 1993, ch. 2, §§ 1-36. This had the effect of amending RCW 42.17 in several places. One of the amendments prohibited state legislators and persons employed by or acting on their behalf from soliciting or accepting contributions "to a public office fund, to a candidate or authorized committee, or to retire a campaign debt" during a period "beginning on the thirtieth day before the date a regular legislative session convenes and continuing thirty days past the date of final adjournment...." RCW 42.17.710.
During the 1995 regular legislative session, the SRCC prepared and mailed two letters to potential campaign donors, asking for contributions to the SRCC. The SRCC is a political committee duly registered with the PDC and subject to the direction and control of the Senate Republican Caucus. The Senate Republican Caucus is comprised entirely of incumbent Republican State Senators. The SRCC's solicitation letters were both signed by State Senator Dan McDonald, the Republican Leader of the Washington State Senate and chair of the SRCC. In the first letter, *1361 dated February 1995, Senator McDonald stated, in pertinent part:
I need your help to win a majority in the Senate.
. . . .
Your support is essential, if we are to continue.
. . . .
Your contribution of $100, $75, $39or whatever you can affordwill make a tremendous difference. Every dollar goes directly to support Republican candidates for the State Senate.
. . . .
Your 1995 membership of at least $39 will be used to defend Republican seats in 1995 and secure a Republican majority by 1996!
Clerk's Papers (CP) at 181-82. Two months later, Senator McDonald signed a second letter which was almost identical to his earlier letter.
Another letter, which was written on the letterhead of Senate Republican Leadership Council[1] and signed by its chair, W.H. Meadowcroft, was also sent to potential donors. Although the Council is an organization separate from the SRCC, the SRCC concedes that it "sponsored" this letter. The letter, dated January 31, 1995, stated in pertinent part:
Our opportunities to win the Majority in the State Senate in 1996 are outstanding. The Democrats have several seats up for election that are traditionally Republican Districts. This is our opportunity to win back these vulnerable districts and regain the Majority in the State Senate.
CP at 178. According to the PDC, the SRCC received over $70,000 in contributions in response to the aforementioned letters and its other fundraising activities conducted during the legislative session freeze period.[2]
On March 10, 1995, the PDC began an investigation to determine whether the SRCC's solicitation of funds during the 1995 legislative session constituted a violation of RCW 42.17.710. The SRCC responded by filing a declaratory judgment action in Thurston County Superior Court, asking that court to declare the PDC's investigation unlawful. It also sought a preliminary injunction to prevent the PDC from "commencing enforcement action or administrative hearings regarding the applicability of RCW 42.17.710." CP at 26. The PDC then issued an "enforcement hearing notice" to the SRCC, its executive director, Sandy Olsen, and its chairperson, Senator Dan McDonald. CP at 150.
The superior court denied the SRCC's motion for preliminary injunction. Consequently, the PDC proceeded with the scheduled enforcement hearing, at the conclusion of which it determined that the SRCC had violated RCW 42.17.710 by soliciting contributions during the legislative session freeze period. The PDC then moved to sequester all funds that had been and would be received in response to the allegedly illegal fundraising. The superior court granted its motion.
Thereafter, the SRCC moved for summary judgment. In support of that motion, the SRCC filed a declaration of Sandy Olsen. In it, she asserted that the monies collected by the SRCC from the letter writing effort and other fundraising activities were to be used for three purposes: (1) to "defray the costs of fund-raising itself'; (2) for "office administration"; and (3) "for ultimate use by new senatorial candidates, that is, individuals who will in the future become candidates for senatorial seats not held by incumbent Republican senators." CP at 650-51. She also stated:
It is true that all funds raised as a result of that letter, net of expenses, were intended *1362 for ultimate use by new senatorial candidates, that is, individuals who will in the future become candidates for senatorial seats not held by incumbent Republican senators. We did not know thenwe still do not knowwho those candidates will be. Since we were trying to build a fund for future campaigns and were not soliciting on behalf of any actual, present, identified candidate....
CP at 650-51. In a later filed declaration, Olsen stated that contributions to the SRCC do not and cannot influence any sitting Republican senator because "none of them directly benefit from the monies obtained." CP at 587.
The PDC responded by filing a counterclaim for "penalty and equitable relief." CP at 170. It also moved for summary judgment on its counterclaim and for dismissal of the SRCC's declaratory judgment action. After a hearing on the cross motions for summary judgment, the superior court concluded that "during the 1995 legislative freeze period, the SRCC accepted contributions in violation of RCW 42.17.710." Consequently, it entered an order dismissing the SRCC's declaratory judgment action and granting partial summary judgment to the PDC on its counterclaim. The superior court also ordered the SRCC to "cease and desist from soliciting and accepting contributions in violation of 42.17.710." CP at 758. It deferred consideration of sanctions "until final determination of whether a violation of RCW 42.17.710 has occurred." CP at 758.[3]
Following denial of its motion for reconsideration, the SRCC appealed to Division Two of the Court of Appeals. That court certified the appeal to this court. We granted review.
We are called upon to determine whether the superior court erred in granting partial summary judgment in favor of the PDC. A summary judgment motion should be granted if the submissions show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom in favor of the nonmoving party, in this case the SRCC. Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wash.2d 255, 256, 616 P.2d 644 (1980); see also Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). The construction of a statute is a question of law and is reviewed de novo. Health Ins. Pool v. Health Care Auth., 129 Wash.2d 504, 507, 919 P.2d 62 (1996).
To resolve the issue before us, it is necessary to examine RCW 42.17.710, the statute that establishes the legislative session freeze perioda period of time before, during and after a legislative session in which certain political fundraising is proscribed. It provides:
During the period beginning on the thirtieth day before the date a regular legislative session convenes and continuing thirty days past the date of final adjournment, and during the period beginning on the date a special legislative session convenes and continuing through the date that session adjourns, no state official or a person employed by or acting on behalf of a state official or state legislator may solicit or accept contributions to a public office fund, to a candidate or authorized committee, or to retire a campaign debt.
RCW 42.17.710 (emphasis added). In order to sustain the superior court's determination that the SRCC's fundraising efforts constituted a violation of the statute, we would have to be satisfied that: (1) a "person" who is either a legislator or is employed by or acting on behalf of a legislator (2) solicited or accepted contributions to a candidate or authorized committee (3) during the period of time that solicitation and acceptance of contributions is prohibited.
The SRCC acknowledges that it is a political committee and, consequently, a "person" *1363 under former RCW 42.17.020(22) (1994)[4] and that it was acting on behalf of a legislator. It also does not dispute that it engaged in fundraising, during the legislative session freeze period, for the benefit of individuals then unknown to it that would, in the future, seek election to the State Senate as Republicans. Finally, although it disputes that it solicited funds for the campaigns of incumbent Republican senators, it concedes that it would have violated RCW 42.17.710 if it had done so. For reasons we discuss below, we conclude that a material fact question exists as to whether the SRCC intended that the funds it solicited during the 1995 legislative session would inure to the benefit of incumbent Republican senators.
The remaining issue, and the one that prompted our direct review of the trial court's ruling, is whether the SRCC violated RCW 42.17.710 when it solicited funds for the benefit of individuals, then unknown to the SRCC, who would run in the future for Senate positions not held by incumbent Republican senators. That is entirely a question of law, the answer being provided by RCW 42.17.710 and the statutory provisions defining the term candidate.
As we have observed above, the provisions of RCW 42.17.710 are triggered by the solicitation and/or acceptance of campaign funds for a "candidate" or authorized committee of a candidate. RCW 42.17.710. Therefore, we must focus on the question of whether the intended beneficiaries of the SRCC's campaign fundraising can be said to be in the category of a "candidate."
At the time the SRCC engaged in the allegedly unlawful solicitation of campaign funds, the Fair Campaign Practices Act contained two definitions of the term candidate. One definition appeared in the general definitions section of the Act, former RCW 42.17.020(5) (1994). It stated:
"Candidate" means any individual who seeks election to public office. An individual shall be deemed to seek election when he first:
(a) Receives contributions or makes expenditures or reserves space or facilities with the intent to promote his candidacy for office; or
(b) Announces publicly or files for office.
The other definition of candidate was found in former RCW 42.17.630(3) (1994), the portion of the Act regulating campaign contributions. Candidate was defined there as:
an individual seeking nomination for election or seeking election to a state office. An individual is deemed to be seeking nomination for election or seeking election when the individual first:
(a) Announces publicly or files for the office;
(b) Purchases commercial advertising space or broadcast time to promote his or her candidacy;
(c) Receives contributions or makes expenditures for facilities with intent to promote his or her candidacy for the office; or
(d) Gives his or her consent to another person to take on behalf of the individual any of the actions in (b) or (c) of this subsection.
We note, first, that the definition contained in former RCW 42.17.630(3) (1994) differs very little from the definition found in former RCW 42.17.020(5) (1994). Indeed, former RCW 42.17.630(3) (1994) incorporates the definition in former RCW 42.17.020(5) (1994) and simply adds subsections (c) and (d).[5] In any case, both definitions have application here. Former RCW 42.17.630(3) (1994) applies by virtue of the language in former RCW 42.17.630 (1994) that "[u]nless the context clearly requires otherwise, the definitions in this section apply throughout RCW 42.17.640 through RCW 42.17.790." Former RCW 42.17.020(5) (1994) applies because of *1364 the general principle that the statutory definition of a term "controls its interpretation." See State v. Morris, 77 Wash.App. 948, 950, 896 P.2d 81 (1995) (citing City of Seattle v. Shepherd, 93 Wash.2d 861, 866, 613 P.2d 1158 (1980)).
The SRCC contends that its solicitation of funds for the benefit of individual Republicans, then unknown to the SRCC, who would ultimately seek election to the State Senate is not violative of RCW 42.17.710. That is so, the SRCC posits, because these unknown individuals have not taken any of the steps set forth in former RCW 42.17.020(5) (1994) and former 42.17.630(3) (1994) and thus cannot be said to be candidates. It urges on us the proposition that RCW 42.17.710 is based on a "snapshot principle," in that the statute prohibits solicitation of funds on behalf of an individual who is actively seeking office at the exact point in time when the funds are solicited, in this case, during the 1995 legislative session freeze period. Br. of Appellant at 11-14.
Although the PDC conceded at oral argument that a technical reading of the statute supports the SRCC's assertion that RCW 42.17.710 did not bar the SRCC from raising funds for individuals who had not taken the steps outlined in the statutory definitions of the term candidate, it argues that such an interpretation is contrary to its prior interpretation of RCW 42.17.710, counter to the voters' intent in enacting the statute and inconsistent with the provisions of RCW 42.17.920, which mandate a liberal construction of the Act. Br. of Resp't at 24.
The PDC makes the point that it previously determined that RCW 42.17.710 "prohibits caucus committees from soliciting or accepting contributions for its own use during the legislative freeze period (except to pay the PDC fine)." CP at 112. That determination, it suggests, should be given substantial deference because it "has developed expertise in this area of the law." Br. of Resp't at 29 (citing Overton v. Economic Assistance Auth., 96 Wash.2d 552, 637 P.2d 652 (1981)).
In our view, the prior determination of the PDC is of no moment here. First, we have some doubt about the certainty of that determination. The record shows that the determination was contrary to an earlier determination of the PDC[6] and was merely memorialized in a memorandum to "Legislative Caucus Campaign Committees" from a PDC staff member. The memo went on to state that "the members [of the PDC] will clarify their position through the formal rule making process, affording everyone concerned an opportunity to comment on this matter." CP at 112. Furthermore, resolution of the issue before us is controlled by our determination of the meaning of the term candidate within the context of RCW 42.17.710. As we have previously noted, it is the ultimate prerogative of the courts to settle the purpose and meaning of statutes. Overton, 96 Wash.2d at 555, 637 P.2d 652. "[A]n administrative determination will not be accorded deference if the agency's interpretation conflicts with the relevant statute." Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 815, 828 P.2d 549 (1992) (citing Department of Labor & Indus. v. Landon, 117 Wash.2d 122, 127, 814 P.2d 626 (1991)).
The PDC asserts, additionally, that an interpretation of the term candidate which does not include unknown future candidates is contrary to the intent of the voters in enacting RCW 42.17.710. The flaw in this argument is that the PDC attributes an intent to the voters that is not borne out by the language of the statute. It is a fundamental principle that we are to derive the intent behind a given statute solely from its language. See Bravo v. Dolsen Companies, 125 Wash.2d 745, 888 P.2d 147 (1995).[7] Only *1365 when the statutory language is ambiguous do we apply other general rules of statutory construction and go behind the language of the statute to attempt to understand the intent of the Legislature, or in this case the people, in passing the statute. See City of Spokane v. Taxpayers of Spokane, 111 Wash.2d 91, 98, 758 P.2d 480 (1988) (citing State v. Johnson, 104 Wash.2d 179, 181, 703 P.2d 1052 (1985)).
Looking at the plain language of RCW 42.17.710 and the two statutes that defined the term candidate at the time the SRCC engaged in the allegedly unlawful fundraising, we find that we cannot interpret RCW 42.17.710 as the PDC would have us do. In our judgment, RCW 42.17.710 prohibits the raising of campaign funds for a candidate and the former RCW 42.17.020(5) (1994) and RCW 42.17.630(3) (1994) make the meaning of the term candidate clear and unambiguous. Thus, we are not required to glean the intent of the people from sources other than these statutes in order to determine who is a candidate for purposes of RCW 42.17.710. See City of Tacoma v. State, 117 Wash.2d 348, 356, 816 P.2d 7 (1991) ("Because the intent of the people is clearly expressed in the statute, we do not need to look to the [voters'] pamphlet.").
In our view, the term candidate, as it is used in RCW 42.17.710 and unambiguously defined in former RCW 42.17.020(5) and former RCW 42.17.630(3), does not include individuals who, at the point in time at which the campaign funds are solicited, have not taken any of the steps outlined in those statutes, i.e., announced their candidacy publicly, filed for office, purchased commercial advertising space or broadcast time, received contributions or made expenditures with an intent to promote their candidacy, or given consent to any other individual or group to take any of those actions on their behalf.
We are not unmindful of the dissent's assertion that the term candidate is ambiguous, i.e., susceptible to more than one meaning. The dissenter suggests that the term could include an individual who takes the steps set forth in RCW 42.17.630(3) "later in time." Dissenting op. at 1367. That assertion flies in the face of the plain language of RCW 42.17.630(3) which states that a person is a candidate when he or she "first" takes one of the steps listed in subsection (a)-(d). The clear implication of that language is that the person must have taken one of those steps prior to becoming a "candidate." There is no ambiguity.
Even if it was unclear whether unidentified future senatorial candidates were included within the definition of candidate, we are unpersuaded that a liberal interpretation of that term effectuates the voters' intent in enacting the statute. Although the PDC is correct in observing that RCW 42.17.920 and RCW 42.17.010(11) provide that the Act is to be liberally construed,[8] we have previously held that a statutory directive to give a statute a liberal construction does not require us to do so if doing so would result in a strained or unrealistic interpretation of the statutory language. See Bird-Johnson Corp. v. Dana Corp., 119 Wash.2d 423, 427, 833 P.2d 375 (1992). For reasons we have stated above, giving RCW 42.17.710 and the former statutory definitions of the term candidate the liberal construction suggested by the PDC would result in an unrealistic interpretation of the statute. Moreover, in determining the intent of the voters, we are to focus on the language of the initiative "`as the average informed lay voter would read it.'" Taxpayers, 111 Wash.2d at 97, 758 P.2d 480 (quoting Estate of Turner v. Department of Rev., 106 Wash.2d 649, 654, 724 P.2d 1013 (1986)). The average voter would not, in our judgment, understand the *1366 term candidate to include unidentified individuals, who were not, when the funds were solicited, actively seeking elective office. It is more likely that a voter would accord the term a meaning consistent with that found in a standard dictionary. A candidate is defined in at least one dictionary as "one that presents himself or is presented by others often formally or officially as suitable for and aspiring to an office, position, membership, right, or honor." Webster's Third New International Dictionary 325 (3d ed.1986)
Furthermore, we cannot agree that a strict interpretation of the term candidate runs counter to the intent of the voters in passing the initiative. The intent of the voters was set forth in RCW 42.17.620, which states that by limiting campaign contributions, the people intended to ensure that individuals and interest groups have fair and equal opportunity to influence elective and governmental processes, reduce the influence of large organizational contributors and restore public trust in governmental institutions. We fail to see how the act of soliciting campaign funds for the benefit of then unknown individuals who do not, as of the time of the solicitation, meet the statutory definition of candidate, defeats the voters' expressed intent.
We are also concerned that the liberal interpretation of the term candidate urged on us by the PDC runs counter to the requirement that statutes regulating political speech must be narrowly tailored. Although limitations on campaign contributions have been held to be less restrictive of political speech than limitations on campaign expenditures, they do impinge on protected associational freedoms. See Buckley v. Valeo, 424 U.S. 1, 21-25, 96 S.Ct. 612, 635-38, 46 L.Ed.2d 659 (1976). As such, "statutory classifications impinging upon that right [to engage in political expression] must be narrowly tailored to serve a compelling governmental interest." Austin v. Michigan Chamber of Commerce, 494 U.S. 652, 666, 110 S.Ct. 1391, 1401, 108 L.Ed.2d 652 (1990) (citing Police Dep't v. Mosley, 408 U.S. 92, 101, 92 S.Ct. 2286, 2293, 33 L.Ed.2d 212 (1972)). In our view, adoption of the liberal interpretation of RCW 42.17.710 and the statutes defining the terms therein suggested by the PDC would not further a compelling governmental interest and would serve only to unreasonably inhibit political expression and discourse.
Finally, the dissent contends that what it describes as "[t]he majority's narrow interpretation" of RCW 42.17.710 "renders the statute meaningless." Dissenting op. at 6. This is simply incorrect. As we have indicated, the statute clearly bars incumbents and persons who meet the definition of candidate from seeking and accepting contributions during the proscribed period. If the Legislature or the people wish to broaden the statute to include within the statute's reach individuals who have not taken the steps outlined in the current statutory definition of candidate, that can easily be accomplished by amendment. It is not appropriate, however, for this court to broaden the statute beyond its plain terms. See Associated Gen. Contractors v. King County, 124 Wash.2d 855, 865, 881 P.2d 996 (1994) ("courts may not create legislation in the guise of interpreting it").
In sum, for the SRCC to have violated RCW 42.17.710, it must have solicited or accepted funds for an individual who has taken one of the actions outlined in the statutes that defined the term candidate. For reasons we have stated above, to the extent the fundraising activities of the SRCC were intended to benefit future unknown and undeclared Republican candidates for the State Senate, the fundraising activity of the SRCC was not violative of RCW 42.17.710. Although the solicitation of campaign funds during the legislative freeze period for known candidates or incumbent Republican senators would run afoul of RCW 42.17.710, it is not clear that any solicitation of funds for such persons occurred here. The PDC suggests that the record establishes otherwise; however, the executive director of the SRCC, Sandy Olsen, refutes that in her affidavit. Because her affidavit submitted on behalf of the nonmovant must be taken as true for purposes of summary judgment, we can conclude only that there is a material *1367 factual issue that must be resolved at trial.[9] At trial, of course, the PDC can attempt to show that the SRCC raised money for actual "candidates" (i.e., those persons who meet the statutory definitions). The trial court's summary judgment order is reversed and the case remanded for trial.
DURHAM, C.J., and DOLLIVER, MADSEN and SANDERS, JJ., concur.
JOHNSON, Justice (dissenting).
The people enacted Initiative 134, the Fair Campaign Practices Act (Act), to control the political fundraising of legislators during the time they are engaged in lawmaking in order to prevent campaign contributions from influencing or appearing to influence the legislative process. The majority, by narrowly interpreting the statute, failing to follow the Act's liberal construction mandate, and ignoring the intent and purpose of the statute, frustrates this purpose and allows the conduct the statute was designed to prohibit. The majority allows the Senate Republican Campaign Committee (SRCC) to fundraise for candidates, so long as candidates are unknown or undeclared, but remands for trial the issue of whether the SRCC solicited or accepted contributions for known candidates or incumbent Republican senators. The letters at issue contain the following phrases: "help to win a majority in the Senate"; "assure a Senate Republican majority by 1996"; "will be used to defend Republican seats ..."; and "goes directly to support Republican candidates...." Clerk's Papers at 181-82 (Ex. 2) (emphasis added). The majority concludes these do not, on their face, violate the statute. I disagree and would hold the statute prohibits a legislative caucus from fundraising for present or future candidates during the legislative freeze period and affirm the trial court's decision finding the SRCC solicited and accepted contributions in violation of RCW 42.17.710.
The sole issue for the majority is whether the SRCC solicited from or accepted contributions to a candidate. To answer this question, the majority looks to RCW 42.17.710 and the statutory definitions of the term "candidate," and finds the term "candidate" unambiguous. The majority, therefore, declines to follow the statutory mandate of RCW 42.17.920 to liberally construe the provisions of the Act to effectuate its policies and purposes.
I disagree with the majority's conclusion that the term "candidate" is unambiguous. A statute susceptible to more than one meaning is ambiguous. In re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 778, 903 P.2d 443 (1995). The former preamble to the definitions section of former RCW 42.17.630 reads: "[u]nless the context clearly requires otherwise, the definitions in this section apply throughout [RCW 42.17.640 through RCW 42.17.790] of this act."[1] (Emphasis added.) This means different definitions may apply, depending on the context in which the term is used. Here, the term "candidate" may thus be interpreted as defined in former RCW 42.17.630(3) or as the context of RCW 42.17.710 requires. A "candidate" may be either (1) an individual who has taken the steps toward declared candidacy as set out in former RCW 42.17.630(3) at the time the contributions are solicited or accepted, or (2) an individual who takes those steps later, because the context of RCW 42.17.710 requires this definition. The term is susceptible to more than one meaning and is, therefore, ambiguous.
The question then becomes which definition to apply. The statute provides the answer. As stated previously, RCW 42.17.710 must be liberally construed to effectuate the policies and purposes of the Act. RCW 42.17.920. This liberal construction mandate means the coverage of the Act's provisions must be liberally construed and its exceptions narrowly confined. Vogt v. Seattle-First *1368 Nat'l Bank, 117 Wash.2d 541, 552, 817 P.2d 1364 (1991).
The intent of the people in enacting Initiative 134, which we must effectuate, is found in the statute itself. The relevant portion of the stated intent is as follows:
The people of the state of Washington find and declare that:
(1) The financial strength of certain individuals or organizations should not permit them to exercise a disproportionate or controlling influence on the election of candidates.
(2) Rapidly increasing political campaign costs have led many candidates to raise larger percentages of money from special interests with a specific financial stake in matters before state government. This has caused the public perception that decisions of elected officials are being improperly influenced by monetary contributions.
RCW 42.17.610(1), (2).
By limiting campaign contributions, the people intend to:
(1) Ensure that individuals and interest groups have fair and equal opportunity to influence elective and governmental processes;
(2) Reduce the influence of large organizational contributors; and
(3) Restore public trust in governmental institutions and the electoral process.
RCW 42.17.620.
To effectuate the polices and purposes of the Act, and to determine whether the context of the statute requires a definition other than that explicitly provided, we must look to the conduct proscribed. RCW 42.17.710 prohibits fundraising for candidates during the legislative freeze period. This statute functions as a timing mechanism. It focuses on a period during which legislators' votes could be, or could appear to be, influenced by contributions. The statute thus helps to ensure the integrity of the legislative process and guards against the appearance of impropriety. In order for the statute to work effectively and prohibit the intended conduct, a "candidate" must necessarily be defined as any person who is either presently a candidate or who will, in the future, become a candidate.
Whether a contribution received during a legislative session is for a particular individual candidate or for a future, as yet unknown or undeclared, candidate does not affect the possibility that those contributions could coerce, pressure, or tempt legislators' votes, or appear to do so. To allow the SRCC[2] to raise money for candidates, so long as candidates are as yet unknown, will simply lead to candidates waiting to declare themselves until after the legislative freeze period is over, thus circumventing the statute.[3] The majority's narrow interpretation thus renders the statute meaningless. Whether a person makes a contribution to a caucus during the legislative freeze period for a specific versus a generic candidate makes no difference as to the potential effects or perceived effects of that contribution.
The trial court stated:
[F]und raising solicitation efforts undertaken by partisan caucusesaided or endorsed by incumbent legislatorsfor the purpose of raising money to elect future candidates runs afoul [of] the express purpose and intent of RCW 42.17.610 through.710. Elimination of the public perception that the decisions of their elected legislators are being improperly influenced to favor those who make monetary contributions to the partisan caucuses of the party to whom the legislator belongs, can only be effectively achieved if RCW 42.17.710's proscription applies whether or not such *1369 solicitations are for a declared or yet undeclared future candidate.
If one could contribute money in response to a caucus solicitation for a yet-to-be-named candidate, he/she could as easily gain the favor of, or buy the influence of, the legislator or legislators in the party of the caucus soliciting such monetary contributions, just as much as he/she could obtain such influence by contributing directly to any such solicitation for a declared, though not an incumbent, candidate for the legislature.
Clerk's Papers at 693-94. I agree.
GUY, SMITH and TALMADGE, JJ., concur.
NOTES
[1] The Senate Republican Leadership Council is comprised of "individual business persons and community leaders who contribute at least $500." CP at 647. Lobbyists are not included among its members. Most of the money it raises is from individuals rather than corporations.
[2] In addition to the letter writing effort, the SRCC raised approximately $9,300 from a telemarketing program that was carried on in May 1995. Of the over $70,000 raised by the SRCC, 959 contributions were of $50 or less, 88 contributions were between $50 and $100, and 89 contributions were greater than $100. The average contribution was $68.
[3] The trial court indicated that its ruling was limited to a determination that "the PDC had authority to interpret RCW 42.17.710, subject to judicial review, and its interpretation accurately reflected the intent of the drafters." It went on to say that the SRCC was "not precluded from raising other issues in its appeal of the PDC's Order under the standards of the Administrative Procedures Act." CP at 758.
[4] Former RCW 42.17.020(22) (1994) defines "person" as "an individual, partnership, joint venture, public or private corporation, association, federal, state, or local governmental entity or agency however constituted, candidate, committee, political committee, political party, executive committee thereof, or any other organization or group of persons, however organized." (Emphasis added).
[5] The Act currently provides only one definition of candidate. It is found in RCW 42.17.020(8). That definition is almost identical to former RCW 42.17.630(3) (1994).
[6] Sandy Olsen, executive director of the SRCC, stated in her declaration that "[p]rior to January 19, 1995, the SRCC had been advised by the [PDC] that the [sic] RCW 42.17.710 did not apply to the caucus or its agents," and that the SRCC treated the January 19, 1995 letter as "an advisory that the PDC would be moving to promulgate a rule based on their new interpretation" and therefore believed it was "lawful to continue with its campaign activity." CP at 167, 168.
[7] The basic rules of statutory construction apply with equal force to legislation by the people through the initiative process. Seeber v. Public Disclosure Comm'n, 96 Wash.2d 135, 139, 634 P.2d 303 (1981) (citing State ex rel. Pub. Disclosure Comm'n v. Rains, 87 Wash.2d 626, 633 n. 5, 555 P.2d 1368, 94 A.L.R.3d 933 (1976)).
[8] RCW 42.17.920 states, in pertinent part, that "[t]he provisions of this act are to be liberally construed to effectuate the policies and purposes of this act." The policy of the Act is declared in RCW 42.17.010(1)-(11). RCW 42.17.010(11) states, in pertinent part, that the Act is to be liberally construed in order "to promote complete disclosure of all information respecting the financing of political campaigns and lobbying, and the financial affairs of elected officials and candidates, and full access to public records so as to assure continuing public confidence of fairness of elections and governmental processes, and so as to assure that the public interest will be fully protected."
[9] The dissent suggests that we have concluded that the fundraising letters "do not, on their face, violate the statute." Dissenting op. at 1367. We have not reached that conclusion. We have simply stated that to the extent the fundraising efforts were for the benefit of unknown candidates, the statute is not violated. At trial, if it can be shown that persons meeting the definition of candidate were intended beneficiaries of the fundraising effort, there is a violation.
[1] RCW 42.17.630 was repealed in 1995 by a bill originating in the Senate. Laws of 1995, ch. 397, § 34.
[2] In 1994, the Legislature adopted joint rules that included a provision prohibiting legislative caucuses from conducting fundraising activities during any legislative session. In 1995, the Legislature could not agree on joint rules; however, all three other caucuses agreed not to seek or accept contributions during the legislative freeze period.
[3] The focus here must be on an informal declaration of candidacy, because generally, declarations of candidacy must be filed no earlier than the fourth Monday in July and no later than the following Friday in the year in which the office is scheduled to be voted upon. RCW 29.15.020. Therefore, candidates would not have actually filed during most regular legislative freeze periods.