[No. 53085-2-I.   Division One.   January 3, 2005.]

MODERN SEWER CORPORATION, ET AL., *Respondents*, v. NELSON DISTRIBUTING, INC., *Petitioner*.

---

*Bradley A. Maxa* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*), for petitioner.

*John R. Spencer* and *David N. Land* (of *Spencer & Loescher, P.L.L.C.*), for respondents.

*Christine O. Gregoire, Attorney General*, and *Steven J. Thiele, Assistant*, on behalf of the Department of Ecology, amicus curiae.

*Gillis E. Reavis* on behalf of Washington Environmental Council, amicus curiae.

¶1 APPELWICK, J. — Modern Sewer Corporation hired Nelson Distributing to provide petroleum to its gas station in Mukilteo, Washington. Nelson Distributing did not pump the 2,000 gallons of gasoline Modern Sewer ordered into the underground storage tank (UST); instead, it mistakenly pumped all 2,000 gallons into a monitoring well and into the ground. Modern Sewer Corporation sued under the Model Toxics Control Act (MTCA), chapter 70.105D RCW. Nelson argued that the MTCA did not apply because it does not provide a definition of "disposed" commensurate with Nelson's actions and requested the trial court to dismiss Modern Sewer's MTCA claim for failure to state a claim under which relief could be granted. The trial court denied the motion. We affirm.

FACTS

¶2 Modern Sewer Corporation hired Nelson Distributing, Inc., to provide 2,000 gallons of gasoline to its gas station in Mukilteo, Washington. Nelson Distributing delivered the gasoline as requested, but instead of pumping it into the UST, Nelson Distributing pumped the 2,000 gallons of gasoline into a monitoring well and subsequently into the ground.

¶3 A Modern Sewer employee noticed that the gasoline pumps were not working about two days later. Modern Sewer contacted an independent contractor to help them discover the problem. The independent contractor checked the UST with a measuring stick and informed Modern Sewer that the gasoline pumps were not working because the UST was empty. Nelson Distributing admitted that it

had unintentionally pumped the gasoline into the monitoring well and delivered an additional 2,000 gallons to the UST at no extra cost.

¶4 Shortly after confronting Nelson Distributing, Modern Sewer received a complaint from a downhill tenant about gasoline smell. An investigation of this complaint uncovered a large amount of gasoline in the surface water drain system.

¶5 Modern Sewer filed a complaint against Nelson Distributing in which it alleged that Nelson was liable for pumping the 2,000 gallons of gasoline into the ground under the MTCA. Nelson Distributing moved to dismiss Modern Sewer's complaint for failure to state a claim on which relief can be granted. The trial court rejected Nelson Distributing's motion to dismiss and this appeal followed.

ANALYSIS

I. Standard of Review

¶6 "A trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6) is a question of law" that we review de novo. *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). Courts should dismiss under this rule only when it appears beyond a reasonable doubt that no facts exist that would justify recovery. *Cutler*, 124 Wn.2d at 755.

II. Disposal Under RCW 70.105D.040

¶7 Nelson Distributing argues that RCW 70.105D-.040(1)(c) does not apply to its actions because Nelson Distributing did not "dispose" of the gasoline under the meaning of the statute. RCW 70.105D.040(1)(c) provides:

> Except as provided in subsection (3) of this section, the following persons are liable with respect to a facility:
>
>     . . . .

(c) Any person who owned or possessed a hazardous substance and who by contract, agreement, or otherwise arranged for disposal or treatment of the hazardous substance at the facility, or arranged with a transporter for transport for disposal or treatment of the hazardous substances at the facility, or otherwise generated hazardous wastes disposed of or treated at the facility.

¶8 The "Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) [42 U.S.C. §§ 9601- 9675] defines 'disposal' to include 'the discharge, deposit, injection, dumping, spilling, [or] leaking' of hazardous waste." MTCA is modeled after CERCLA and the act that amended CERCLA, the Superfund Amendments and Reauthorization Act of 1986 (SARA). Nelson Distributing argues that the fact that certain CERCLA provisions were omitted from MTCA gives rise to the inference that they were intentionally rejected. In support of its argument, Nelson Distributing cites *Bird-Johnson Corp. v. Dana Corp.*, 119 Wn.2d 423, 833 P.2d 375 (1992). The Washington Supreme Court in *Bird-Johnson* addressed whether a private right of action existed under MTCA although MTCA contained no language creating that right. *Bird-Johnson*, 119 Wn.2d at 426-27. SARA, however, does contain language creating such a right. *Bird-Johnson*, 119 Wn.2d at 427. The court stated:

It is noteworthy that these 15 words from SARA which created an express right of contribution were not inserted into the MTCA. The MTCA's drafters could easily have included language providing for contribution, especially since SARA provided a ready model, but they did not. The omission of these words is a clear indication that the MTCA's drafters did not intend to adopt CERCLA's more expansive contribution provision.

¶9 Thus, Nelson Distributing argues, we may not adopt a meaning of the word "disposal" that is as broad as the definition given in CERCLA. Instead, it urges us to give the word "disposal" its "ordinary meaning: to discard or throw away."

¶10 We agree with Nelson Distributing that an omission from MTCA of the CERCLA/SARA language defining "disposal" creates an inference that the initiative creating MTCA did not intend to incorporate the CERCLA/SARA definition. We also agree that an undefined statutory term must be given its ordinary meaning, taking into account legislative purposes that are explicitly included in the statute. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 10-11, 43 P.3d 4 (2002).

¶11 However, we do not agree that the ordinary meaning of "disposal" necessarily requires that we reject all elements of the CERCLA/SARA definition. In *Bird-Johnson*, the Washington Supreme Court noted that the express right of contribution was present in SARA but absent in MTCA. *Bird-Johnson*, 119 Wn.2d at 427-28. Accordingly, the court concluded that this absence was indicative of the intent not to adopt a contribution provision. *Bird-Johnson*, 119 Wn.2d at 427-28. However, the holding in *Bird-Johnson* is not dispositive of the proper definition of "disposal." The word "disposal" is not absent from MTCA, merely undefined. *See* RCW 70.105D.040(1)(c). Here, we are not concerned with inserting a substantive provision that was omitted when the statute was adopted. We are asked only to determine the meaning of a term used in the text. It is within the province of the courts to give undefined statutory words their ordinary meaning. *State v. Smith*, 117 Wn.2d 263, 270-71, 814 P.2d 652 (1991). MTCA's lack of definition for the word "disposal" may be the result of a view that the ordinary definition was adequate—that the word needed no special definition as a term of art for purposes of the act. Nelson Distributing overstates when it argues that the failure of MTCA to define "disposal" as it was defined in CERCLA requires us to conclude that the drafters of MTCA intended to reject completely CERCLA's definition of the term "disposal." MTCA did not expressly reject every portion of CERCLA's definition. *Bird-Johnson* does not require us to adopt an ordinary meaning of the word "disposal" that necessarily excludes all of the elements of the CERCLA definition.

¶12 We look to the dictionary to determine the ordinary meaning of the word "dispose." The root of the word is influenced by the Middle French *poser*, which means to put or place. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 654 (1971). The word "dispose" has the following definitions:

> [*T*]*o place*, distribute, or arrange esp. in an orderly or systematic way . . . ; to apportion or allot . . . : to transfer into new hands or to the control of someone else . . . ; to get rid of: throw away.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 654 (1971).

> [*T*]*o pass* into the control of someone else; to alienate, relinquish, part with, or get rid of; to put out of the way; to finish with; to bargain away.

BLACK'S LAW DICTIONARY 471 (6th ed. 1990).

The ordinary meaning of "disposal" that Nelson Distributing advocates is the act of discarding or throwing away.[1] While these dictionary definitions encompass Nelson Distributing's proposed definition, the definition of "disposal" is not limited to this narrower concept.[2] It encompasses putting, placing, transferring, distributing, discharging, discarding, delivering, abandoning, depositing, injecting, dumping, and spilling.[3]

¶13 Nelson Distributing's claim that the term disposal necessarily includes some element of intent is incorrect.

---

[1] Nelson Distributing does not cite any source for this definition.

[2] The Hazardous Waste Management Act (HWMA) adopted prior to MTCA defines "disposal" as "the discarding or abandoning of hazardous wastes." RCW 70.105.010(4). MTCA did not incorporate this definition of "disposal" either. Under Nelson Distributing's argument we would need to reject these elements as well. The result would be absurd.

[3] The Department of Ecology defines disposal as the "discharging, discarding, or abandoning of dangerous wastes or the treatment, decontamination, or recycling of such wastes once they have been discarded or abandoned." WAC 173-303-040. This includes the discharge of any dangerous wastes into or on any land, air or water. WAC 173-303-040. Contrary to Nelson Distributing's assertion, this definition is not broader than the ordinary definition. It is also not inconsistent with the statute and, thus, may be properly relied upon in interpreting the statute. We give deference to the Department of Ecology's interpretation of terms, as it is charged with administering the statute. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994).

The term "disposal" as used in MTCA's "arranger" liability provision encompasses intentional as well as unintentional disposal. *Seattle City Light v. Dep't of Transp.*, 98 Wn. App. 165, 173, 989 P.2d 1164 (1999). In examining this very question Division Two held:

> [T]he MTCA does not require a plaintiff to prove that the defendant had the specific intent to dispose of a hazardous substance:
>
> "Because the MTCA is a strict liability law, it would be incongruous to allow a defendant to escape liability by showing that it did not intend to dispose of a hazardous substance. Such reasoning applied to a case such as this would discourage companies from carefully tracking their hazardous substances, contrary to the intent and purpose of the MTCA."

In *Seattle City Light*, the Washington State Department of Transportation (WSDOT) sold a tank car containing a petroleum product considered hazardous under the MTCA. *Seattle City Light*, 98 Wn. App. at 172. The WSDOT argued that it did not "arrange" for "disposal." *Seattle City Light*, 98 Wn. App. at 171. The *Seattle City Light* court wrote the following:

> WSDOT arranged for the disposal of a hazardous substance when it sold the tank car to Manning as scrap. . . . "[i]t is possible to 'arrange for' disposal without knowing what will happen to the stuff, or even while hoping that it ends up in the best of all possible spots, or while insisting that proper practices be rigorously followed."

98 Wn. App at 172-73 (quoting 4 WILLIAM H. RODGERS, JR., ENVIRONMENTAL LAW: HAZARDOUS WASTES AND SUBSTANCES § 8.12C, at 678 (1992)). The court concluded that WSDOT was liable for having arranged for the disposal of the petroleum product despite the fact that it lacked intent to do so. *Seattle City Light*, 98 Wn. App. at 174. Accordingly, Nelson Distributing's contention that it cannot be held liable because the word "dispose" connotes an intent which it lacked is contrary to established precedent and is incorrect. In addition, because the ordinary definition of "disposal" is not limited to discarding or throwing away, we

reject Nelson Distributing's argument that it must have intended to discard or throw away the hazardous substance to violate the statute.

¶14 Nelson Distributing claims that it was not discarding or throwing away the gasoline, but had merely *"sold* the gasoline, and was *delivering* the gasoline to a customer when the accidental release occurred."[4] Nelson Distributing delivered the gasoline into the monitoring well. It pumped the gasoline into the ground. This is a release of a hazardous product. The fact that Nelson Distributing committed this error incident to a sale intended for delivery to a UST does not change these facts, nor does it absolve it from liability. We hold that Nelson Distributing disposed of a hazardous product within the meaning of RCW 70-.105D.040(1)(c) when it pumped gasoline into the monitoring well.

III. The Useful Product Defense

■ ■ ¶15 Nelson Distributing argues that it is protected from MTCA liability by the "useful product" defense. "The test for the 'useful product' defense is whether the commodity being sold will continue to be used for its originally intended purpose." *Cal. Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930, 963 (E.D. Cal. 2003) (citing *Gould Inc. v. A&M Battery & Tire Serv.*, 933 F. Supp. 431, 436 (M.D. Pa. 1996)). In *Chatham Steel Corp. v. Brown*, 858 F. Supp. 1130 (N.D. Fla. 1994) the Northern District of Florida explained the useful product rule as follows:

> When a party sells a product incidentally containing a hazardous substance but having value as being useful for the purpose for which it was manufactured, then the transaction is less likely to be an "arrangement" to dispose of a hazardous substance. In these cases, the party receiving the product will

---

[4] We note that the tanker from which the gasoline was pumped appears to satisfy the ordinary definition of motor vehicle or of rolling stock as those terms are used in the RCW 70.105D.020(4) definition of "facility." This raises questions of liability under RCW 70.105D.040(1)(b), but we are not asked to resolve that issue here.

use the product in the manner for which it was manufactured. On the other hand, if a product has no value for the purpose for which it was manufactured and it contains a hazardous substance, then it is more likely the sale is an "arrangement" to dispose of the substance.

> [T]he products at issue [in *Chatham Steel*] were spent lead acid batteries. . . . the record does not indicate the batteries . . . were capable of being used as batteries—i.e., they could supply electric current. Rather, the batteries only had value because of the lead they contained. Instead of dealing in a "useful" product, Defendants essentially trafficked in a hazardous substance. This is precisely the type of transaction CERCLA covers.

*858 F. Supp.* at 1140 *(footnote and citations omitted).* Here the product was dumped into a well, not delivered to the UST. The gasoline was no longer a useful product once pumped into the ground. It could no longer be used for its originally intended purpose. It was merely a hazardous substance of no value or use whatsoever. The trial court did not err in holding the useful product defense is not available to Nelson Distributing under the facts of this case.

IV. Attorney Fees

¶16 Nelson Distributing argues that it is entitled to attorney fees under RCW 70.105D.080 as the prevailing party in the MTCA action. Nelson Distributing is not entitled to attorney fees on appeal because it is not the prevailing party. Modern Sewer did not request attorney fees on appeal.

¶17 We affirm.

COLEMAN and KENNEDY, JJ., concur.

Review denied at 155 Wn.2d 1013 (2005).