[No. 33236-1-II. Division Two. October 10, 2006.]

TESORO REFINING AND MARKETING COMPANY, *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

412

*George C. Mastrodonato* (of *Dorsey & Whitney, L.L.P.*) and *Michael B. King* (of *Lane Powell, P.C.*), for appellant.

*Robert M. McKenna, Attorney General,* and *Anne E. Egeler, Assistant,* for respondent.

¶1 ARMSTRONG, J. — Tesoro Refining and Marketing Company appeals a summary judgment order denying its requested refund of hazardous substance taxes that the Department of Revenue (Department) imposed on the company for possessing a hazardous substance. Tesoro argues that its possession of "refinery gas" was too fleeting to

constitute possession under chapter 82.21 RCW. Tesoro further argues that WAC 458-20-252(7)(b) and WAC 458--20-252(8)(c) support its position that refinery gas is a nontaxable substance when immediately consumed in the refinery's manufacturing processes. We hold that Tesoro possesses refinery gas, a hazardous substance, and that WAC 458-20-252(7)(b) and WAC 458-20-252(8)(c) do not support Tesoro's contention that hazardous substances consumed during the manufacturing process are not subject to the tax. Accordingly, we affirm.

## FACTS

¶2 Tesoro's Anacortes refinery processes crude oil into various consumable products, such as gasoline, diesel, jet fuel, heavy fuel oils, propane, and asphalt. Tesoro first preheats the crude oil in large process furnaces before feeding the crude oil to the crude processing unit. The chemical reactions that occur in the several refining process units throughout the refinery produce "refinery gas" as a byproduct.[1] Clerk's Papers (CP) at 42-43. Once extracted, refinery gas is not a desired yield from crude oil processing, and Tesoro manipulates chemical reactions in the refinery to minimize the byproduct. Tesoro cannot and does not sell refinery gas; rather, the processing machinery immediately recovers the gas yielded from the several processes, pipes it to a fuel gas blender,[2] mixes it, and then burns it to provide heat for the process heaters and boilers. Refinery gas never

---

[1] Refinery gas is the hazardous substance that the Department taxed and is the subject of this appeal. Refinery gas may contain methane, ethylene, butane, butylenes, propane, hydrogen, and propylene. At Tesoro's Anacortes refinery, the gas "is immediately reacted with air and completely consumed to provide heat for the manufacturing process." Clerk's Papers at 276.

[2] The blender is a collection box used to collect "lots of other little streams and make one stream out of it, kind of like downspouts on your house collecting all the rain water, and putting it into one junction box, and then one stream goes to the surface drain." CP at 152. The term "blend" is somewhat misleading. The gases are actually just present together in the same vessel and mixing on their own velocity. No chemical reaction occurs. The fuel gas blender is technically an unnecessary component in the refining process, but it "gives [the refinery gas] a little bit more of a mix." CP at 158.

comes into contact with the contents being processed within a particular unit.

¶3 The refinery gas provides 75 percent of the heat needed in the refining manufacturing process. Because the internally produced refinery gas cannot meet all of the refinery's heating needs, Tesoro also obtains natural gas via pipeline to provide supplemental heat. The refinery also purchases other fuels to supplement refinery gas, including liquid fuel oil, liquid propane, and liquid butane. Tesoro stores those fuels for use in an emergency or in special circumstances.

¶4 Tesoro's refinery furnaces, heaters, and boilers immediately consume the refinery fuel gas, and its refinery flare burns any excess refining gas.[3] On average, Tesoro's refinery consumes the refinery gas 30 seconds after producing it. Refinery fuel gas is in a vapor state, is too volatile to store, and must go immediately to the flare if not consumed.

¶5 The Department imposes a hazardous substance tax[4] on the first possessor of hazardous substances, as defined under chapter 82.21 RCW. RCW 82.21.010, .020. Tesoro does not pay the tax on petroleum products that are refining ingredients, regardless of which company first possesses those ingredients in Washington. Tesoro pays the tax only on final products.

¶6 Tesoro filed for a refund of the $937,889 it paid in hazardous substance taxes from 1999 to June 2003. The Department denied Tesoro's requested refund, stating that "[w]hile it is true that the refinery fuel is consumed at the plant, it is not consumed in the refining process." CP at 61. The Department also stated that the tax applies to refinery gas because that gas is a petroleum product that is removed

---

[3] The refinery flare is a "permanent safety system" that burns excess gas created from anywhere within the refinery. CP at 160. Tesoro uses the flare as "the ultimate protection against all [of its] refinery vessels so [the company does not] overpressure them." CP at 160. The refinery flare also burns any surplus refinery gas beyond that used for heating.

[4] While both parties and the trial court refer to the tax as a hazardous substance tax, the legislature refers to chapter 82.21 RCW as the hazardous substance tax and to the individual taxing statute as the pollution tax. RCW 82.21.030.

from the process and then used at various locations at the plant. Tesoro sought clarification of the Department's ruling, arguing that the Department could not impose the tax because they never stored refinery gas at the plant. The Department responded that Tesoro "stored" the gas, for purposes of the tax, when it removed the refinery gas from the refining process and used the gas to help run the refinery. CP at 67.

¶7 Tesoro then filed this refund suit under RCW 82-.32.180. Both parties moved for summary judgment. The trial court granted the Department's summary judgment motion, ruling that chapter 82.21 RCW required Tesoro to pay hazardous substance tax for possessing refinery gas.

## ANALYSIS

### I. STANDARD OF REVIEW

■■ ¶8 We review issues of statutory interpretation de novo. *City of Olympia v. Drebick*, 156 Wn.2d 289, 295, 126 P.3d 802 (2006) (citing *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). Where a statute's meaning is plain on its face, we give effect to that plain meaning as an expression of legislative intent. *Drebick*, 156 Wn.2d at 295 (quoting *Campbell & Gwinn*, 146 Wn.2d at 9-10). We resort to statutory construction aids, including legislative history, only when the statutory language is ambiguous. *Campbell & Gwinn*, 146 Wn.2d at 12.

¶9 In reviewing an agency rule, we will hold the rule invalid only if: (1) the rule violates constitutional provisions, (2) the rule exceeds the agency's statutory authority, (3) the agency adopted the rule without compliance with statutory rule-making procedures, or (4) the rule is arbitrary and capricious. RCW 34.05.570(2)(c).

### II. EXEMPTION VS. NONTAXABLE INCIDENT

¶10 Tesoro argues that this case is a "tax incidence" case, as opposed to a "tax exemption" case. Br. of Appellant at 15.

It reasons that this distinction is crucial because in a tax incidence case, we must resolve any ambiguity in the taxing statute in favor of the taxpayer; whereas in a tax exemption case, we resolve any ambiguities in favor of the Department. *See First Am. Title Ins. Co. v. Dep't of Revenue*, 144 Wn.2d 300, 303, 27 P.3d 604 (2001) (any doubt as to the meaning of a tax statute is construed against the taxing power); *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 149-50, 3 P.3d 741 (2000) (in case of doubt or ambiguity in interpreting exemption or deduction provisions, this court construes those provisions strictly, though fairly, and in keeping with the ordinary meaning of their language against the taxpayer).

■ ¶11 Tesoro maintains that the taxing incident does not occur here because it does not possess refinery fuel gas under RCW 82.21.020's definition of possession. The Department agrees with Tesoro's analytical framework but argues that Tesoro possesses refinery gas because it controls the gas and uses it for fuel. Because this is a tax incidence case, we must interpret any ambiguity in the statute in Tesoro's favor. *First Am. Title Ins. Co.*, 144 Wn.2d at 303.

### III. APPLICABILITY OF THE HAZARDOUS SUBSTANCE TAX TO REFINERY GAS

■ ¶12 An excise tax is a tax that the State of Washington imposes on a taxpayer for exercising a certain right or privilege. 1B KELLY KUNSCH, WASHINGTON PRACTICE: METHODS OF PRACTICE § 72.4 (4th ed. 1997). The hazardous substance tax is a tax imposed on the privilege of possessing certain hazardous substances in Washington. RCW 82.21.030(1).

■■ ¶13 RCW 82.21.020(1)(b) lists "[p]etroleum products" as hazardous substances. The statute defines "[p]etroleum product[s]" as "every . . . product derived from the refining of crude oil" except for crude oil itself. RCW 82.21.020(2). The statute does not define "derived," but *Webster's Third New International Dictionary* defines "de-

rived" as "formed or developed out of something else." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 608 (1961). The parties agree that refinery gas is formed in the process of refining crude oil. Thus, refinery gas is a petroleum product and a hazardous substance under RCW 82.21-.020(1)(b).

¶14 The intent of chapter 82.21 RCW is "to impose a tax only once for each hazardous substance possessed in this state and to tax the first possession of all hazardous substances, including substances and products that the department of ecology determines to present a threat to human health or the environment." RCW 82.21.010. The relevant statutory language is: **"Pollution tax.** (1) A tax is imposed on the privilege of possession of hazardous substances in this state." RCW 82.21.030(1). For purposes of this chapter, the legislature defines "[p]ossession" as "the control of a hazardous substance located within this state and includes both actual and constructive possession." RCW 82.21.020(3). " 'Actual possession' occurs when the person with control has physical possession," and " '[c]onstructive possession' occurs when the person with control does not have physical possession." RCW 82.21.020(3). The statute defines "[c]ontrol" as "the power to sell or use a hazardous substance or to authorize the sale or use by another." RCW 82.21.020(3).

¶15 Thus, the Department may impose the tax on the first taxpayer who has the power to sell or use a hazardous substance located in Washington, regardless of whether the taxpayer physically possesses the hazardous substance.

A. Tesoro's Possession and Control of Refinery Gas

¶16 Tesoro argues that the Department erroneously imposed the tax because the life span of refinery gas at the refinery is too short for Tesoro to have "any meaningful opportunity for control" and, therefore, possess the refinery gas. Br. of Appellant at 17-19. We disagree.

 ¶17 RCW 82.21.030 does not specify a length of time that a taxpayer must possess a hazardous substance before the tax applies. The plain language of RCW 82.21.030(1) mandates that so long as the taxpayer possesses, i.e., exercises control over, the hazardous substance, the tax applies.

¶18 Russell Crawford, the manager of Tesoro's Anacortes refinery's process engineering department, stated that chemical reactions in different units at the refinery yield refinery gas. Tesoro collects the refinery gas from the different units, pipes the gas to a collection box that funnels the gas into one stream, and sends that stream to the refinery's process heaters, boilers, or the refinery flare where the refinery gas is "immediately, 100 percent consumed (burned)." CP at 43.

 ¶19 Tesoro argues that refinery gas is "not an end product"; rather, it is an "ephemeral product" that is produced and consumed within the manufacturing process. Br. of Appellant at 38. To support its position, Tesoro contends that refinery gas is "not a desired yield from crude oil processing" and that the statute focuses on only commercially viable hazardous substances. Br. of Appellant at 17. But the company admits that it burns the refinery gas "to recover at least its heating value." Br. of Appellant at 17. Further, by its plain language, the statute applies to all hazardous substances, not just those that are commercially viable. RCW 82.21.030(1). Essentially, Tesoro manufactures a hazardous substance, although not a desired product, and uses that hazardous substance to provide heat for the refining process.

¶20 A taxpayer exercises control, either actual or constructive, when it uses a hazardous substance. RCW 82-.21.020(3). Thus, Tesoro's argument that refinery gas has too ephemeral a life span for the company to have "any meaningful opportunity for control" fails. Because Tesoro has the power to use the refinery gas to provide heat for the refining process, it controls and therefore possesses a hazardous substance.

¶21 Tesoro also argues that it does not exercise control over that portion of the refinery gas that it burns through the refinery flare since the company does not have the power to sell or use that portion of the gas. Crawford testified that the fuel blender sends refinery gas to the refinery flare when the refinery produces an overabundance of the gas. He stated that when the refinery produces so much refinery gas that the collection box (fuel blender) gets full, a safety device diverts the refinery gas flow to the refinery flare, which ignites the gas and burns it off. Control, as defined in RCW 82.21.020(3), does not require actual use but only the *power* to use, sell, or authorize another to use or sell a hazardous substance. RCW 82.21.020(3). The fact that Tesoro captures and pipes the refinery gas that eventually burns in the refinery flare evidences its power to use the refinery gas sufficiently enough to establish a taxable possession. As previously mentioned, the taxing statute does not state a specific length of time that a taxpayer must possess the hazardous substance before the tax applies. Because the tax applies to possession, which includes the power to use, the fact that Tesoro does not actually use the refinery gas that burns in the refinery flare is irrelevant.

B. Legislative History

¶22 Tesoro argues that the evolution of the tax, from the legislature's original version through the people's amendment by initiative, shows no intent to tax refinery fuel gas. As discussed above, we consider legislative history of a particular statutory provision only if we find a statute ambiguous. *Campbell & Gwinn*, 146 Wn.2d at 12. We apply the same rule to statutes, such as chapter 82.21 RCW, born of initiatives. *Bird-Johnson Corp. v. Dana Corp.*, 119 Wn.2d 423, 426 n.3, 833 P.2d 375 (1992) (quoting *City of Spokane v. Taxpayers of City of Spokane*, 111 Wn.2d 91, 97, 758 P.2d 480 (1988)). A statute is ambiguous if it is susceptible to two or more reasonable interpretations. *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226

(2005). But " 'a statute is not ambiguous merely because different interpretations are conceivable.' " *Agrilink*, 153 Wn.2d at 396 (quoting *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)).

¶23 RCW 82.21.030(1) is plain on its face. It imposes a tax "on the privilege of possession of hazardous substances" within this state. RCW 82.21.030(1). And RCW 82.21.020(3) says that a taxpayer possesses the hazardous substance if it has the power to control it. Tesoro does not point to any ambiguity in the statute; instead, it reasons that the "plain meaning of the statutes [in chapter 82.21 RCW] can . . . be discerned by all that was done by the Legislature, the Department, and voters of the state of Washington, 'which disclose . . . intent about the provision[s] in question.' " Br. of Appellant at 26 (quoting *Campbell & Gwinn*, 146 Wn.2d at 10). Tesoro urges us to interpret RCW 82.21.030 in light of the remainder of chapter 82.21 RCW and in light of the "evolution" of the tax, including the original version of the tax law, and both former and current versions of WAC 458-20-252.

¶24 We ascertain a statutory provision's plain meaning by examining " 'the statute in which the provision at issue is found, as well as related statues or other provisions of the same act in which the provision is found.' " *Drebick*, 156 Wn.2d at 295 (quoting *Campbell & Gwinn*, 146 Wn.2d at 10). But that examination does not include reviewing legislative history, as Tesoro asks us to do. *See Campbell & Gwinn*, 146 Wn.2d at 12. Nor does the examination include reviewing regulations that an agency adopts to implement a statute, because regulations are not related statutes or provisions within the same act in which a provision can be found. *See Drebick*, 156 Wn.2d at 295. When viewed in the context of chapter 82.21 RCW, the language of RCW 82.21.030 plainly expresses the legislature's intent to impose a tax on the privilege of possessing a hazardous substance in Washington. And refinery gas is a hazardous substance. Thus, we decline to adopt Tesoro's theory that the evolution of the tax shows no intent to tax refinery gas.

¶25 At oral argument, Tesoro argued that we should read RCW 82.21.020(3)'s definition of "control" to mean that a taxpayer exercises control when the taxpayer has the *choice* to sell or use a hazardous substance. Recently, our Supreme Court addressed the meaning of disjunctive connectors in an excise tax statute. *Agrilink*, 153 Wn.2d 392. In *Agrilink*, the court addressed whether Agrilink's processing of perishable meat products into nonperishable canned chile con carne qualified Agrilink for a lower business and occupation (B&O) tax rate on that particular processing activity. The statute provided for a reduced B&O tax rate for taxpayers who engaged in the "business of slaughtering, breaking and/or processing perishable meat products and/or selling the same at wholesale only." RCW 82.04.260(4). The court held that because the legislature used the disjunctive term "and/or," the legislature intended that the taxpayer need perform only one of the listed activities to qualify for the lower tax rate. *Agrilink*, 153 Wn.2d at 397 (Agrilink processed perishable meat products). Likewise, in the instant case, when the legislature uses the disjunctive "or" in its definition of control, the legislature intends that a taxpayer has control of a hazardous substance when the taxpayer has the power to sell or use the hazardous substance. *See* RCW 82-.21.020(3); *Agrilink*, 153 Wn.2d at 397. We reject Tesoro's reading of RCW 82.21.020(3).

C. <u>WAC 458-20-252</u> [5]

1. Rule 252(7)(b)

¶26 Tesoro argues that rule 252 excludes internally produced and consumed substances from the tax and confirms its reading of the legislature's intended scope of RCW 82.21.030. The Department counters that Tesoro's argument attempts to create new exemptions from the tax that

---

[5] The parties refer to this regulation as "[r]ule 252."

are not listed in RCW 82.21.040.[6] The Department maintains that rule 252 conforms with chapter 82.21 RCW because rule 252 ensures that the tax applies once and only to the first possession of the hazardous substance.

¶27 RCW 82.32.300 provides that:

[t]he department of revenue shall make and publish rules and regulations, not inconsistent therewith, necessary to enforce provisions of [chapter 82.21 RCW,] which shall have the same force and effect as if specifically included therein, unless declared invalid by the judgment of a court of record not appealed from.

Tesoro argues that rule 252(7)(b) is "clear and unambiguous in its interpretation of [RCW 82.21.010's[7]] intended scope." Br. of Appellant at 29. Rule 252(7)(b) states:

(7) Recurrent tax liability. It is the intent of the law that all hazardous substances possessed in this state should incur this tax liability only once unless they are expressly exempt. This is true of hazardous ingredients of products as well as the manufactured end product itself, if designated as a hazardous substance.

. . . .

(b) When any hazardous substance(s) is first produced during and because of any physical combination or chemical reaction which occurs in a manufacturing or processing activity, the intermediate possession of such substance(s) within the

---

[6] RCW 82.21.040 contains enumerated exemptions from the tax, one of which is natural gas. RCW 82.21.040(4). For this reason, Tesoro does not pay tax on the natural gas it uses to supplement refinery gas to produce heat for the refining process. Refinery gas is not one of RCW 82.21.040's enumerated exemptions.

[7] RCW 82.21.010 provides: "It is the intent of this chapter to impose a tax only once for each hazardous substance possessed in this state and to tax the first possession of all hazardous substances, including substances and products that the department of ecology determines to present a threat to human health or the environment." Tesoro claims that this statute is ambiguous because "on the one hand, the [tax] applies to 'the first possession of *all* hazardous substances', but on the other hand, the tax applies to those 'substances and products that the department of ecology determines to present a threat to human health or the environment.'" Br. of Appellant at 28. This argument is without merit. The statute's plain language merely allows the department of ecology to include substances not listed in 42 U.S.C. § 9601(14) within the definition of "hazardous substance." *See* RCW 82.21.010, .020(1)(a).

manufacturing or processing plant is not considered a taxable possession if the substance(s) becomes a component or ingredient of the product being manufactured or processed or is otherwise consumed during the manufacturing or processing activity.

¶28 Tesoro argues that because it produces and consumes the refinery gas at the manufacturing plant, the gas is not subject to the tax unless Tesoro takes the gas "outside the refinery gates." Br. of Appellant at 30. Tesoro maintains that, because it completely burns the refinery gas it produces, rule 252(7)(b) exempts refinery gas from taxation because Tesoro otherwise consumes the gas during the manufacturing activity. *See* WAC 458-20-252(7)(b).

¶29 The Department acknowledges that rule 252(7)(b) exempts a substance from taxation when a chemical reaction forms an intermediate substance that reacts further to create an end product. On the other hand, the Department contends that rule 252(7)(b) imposes a tax on an intermediate substance that is withdrawn from the reaction and does not become part of a later taxed product. The Department maintains that Tesoro withdraws refinery gas from the reaction, thus exposing the gas to taxation as an end product.

¶30 Viewed in isolation, rule 252(7)(b) appears to exclude possession of a hazardous substance from the tax if the taxpayer consumes the substance during the manufacturing or processing activity. But as mentioned earlier, RCW 82.32.300 authorizes the Department to adopt rules that are consistent with chapter 82.21 RCW. And we read statutes pertaining to the same subject matter together to give each effect and to harmonize each with the other. *US W. Commc'ns, Inc. v. Utils. & Transp. Comm'n*, 134 Wn.2d 74, 118, 949 P.2d 1337 (1997).

¶31 When read together with chapter 82.21 RCW, rule 252(7)(b) is intended to set the timing of the taxing incident and avoid double taxation of a substance that is first created and then consumed in the manufacturing process. Indeed, rule 252(7) is titled "[r]ecurrent tax liability." WAC

458-20-252(7). The underlying statutory authority refers to first possession of a hazardous substance. *See* RCW 82-.21.010, .040. We cannot define the chemical processes that the Department intended to include within rule 252(7)(b)'s "otherwise consumed" language, but when read in context, the language must refer to multiple possession of a hazardous substance. Rule 252(7)'s title implies that the taxpayer must have at least two possible instances of taxable possession before the rule applies. Tesoro possesses refinery gas only once; therefore, rule 252(7)(b) does not exempt Tesoro's possession of refinery gas from the hazardous substance tax.

¶32 If we accept Tesoro's reading of rule 252(7)(b), the regulation would exempt any hazardous substance that Tesoro completely consumed during manufacturing. To the extent the Department intended rule 252(7)(b) to exempt from taxation hazardous substances possessed only once but completely consumed during the manufacturing process, the rule conflicts with chapter 82.21 RCW and exceeds the Department's statutory rulemaking authority. *See Edelman v. State ex rel. Pub. Disclosure Comm'n*, 152 Wn.2d 584, 591, 99 P.3d 386 (2004) and *Mayflower Park Hotel, Inc. v. Dep't of Revenue*, 123 Wn. App. 628, 633, 98 P.3d 534 (2004) (citing *Green River Cmty. Coll. v. Higher Educ. Pers. Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826 (1980)) (agencies lack the authority to adopt rules that are inconsistent with statutes; and where statutes and rules conflict, the statute prevails).

¶33 Tesoro also contends that rule 252(8)(c) supports its argument that the tax applies only to hazardous substances withdrawn from storage for sale, transfer, manufacture, or consumption. Rule 252(8)(c) provides:

> (8) How and when to pay tax. . . . [The tax] is due for payment together with the timely filing of the return upon which it is reported, covering the tax reporting period during which the hazardous substance(s) is first possessed within this state.
>
> . . . .

(c) Special provision for manufacturers, refiners, and processors. Manufacturers, refiners, and processors who possess hazardous substances are required to report the tax and take any available exemptions and credits only at the time that such hazardous substances are withdrawn from storage for purposes of their sale, transfer, remanufacture, or consumption.

WAC 458-20-252(8)(c). Tesoro argues that it consumes refinery gas but never stores the gas. Tesoro's argument necessarily rests on the assumption that Tesoro is not "storing" refinery gas when it collects the gas from the individual processing units, pipes it to the fuel blender, and then pipes it to the furnaces and boilers that burn the gas to provide heat. But as we earlier discussed, the regulation is silent about how long the taxpayer must "store" the hazardous substance.

¶34 And again, we must read rule 252(8)(c) in conjunction with chapter 82.21 RCW. *See US W. Commc'ns, Inc.*, 134 Wn.2d at 118. RCW 82.21.030 taxes the first possession of hazardous substances in Washington. Rule 252(8)(c) provides a convenience to refiners with respect to the due date of the possession-based tax. Until a refiner sells or consumes a product, the refiner may not know whether the substance is entitled to an exemption or credit under RCW 82.21.040 or WAC 458-20-252. For instance, if the refiner produces a hazardous substance, stores it, and then later uses it as an ingredient in a taxable end product, the refiner would not have to pay the tax on the ingredient under rule 252(7)(b). Rule 252(8)(c), titled "[h]ow and when to pay tax," relates to timing. If the refiner removed the hazardous substance from storage and failed to put it to a use that qualified for an exemption or credit, the tax would immediately become due. WAC 458-20-252(8)(c).

¶35 But when the refiner immediately sells or, in this case, consumes a petroleum product, the refiner knows whether it is entitled to a credit or exemption. Under those circumstances, there is no reason to delay the tax because the refiner knows that the hazardous substance will not eventually become a component or ingredient of another product. Tesoro's rule 252(8)(c) argument fails.

## 2. Intelligibility of Rule 252

██ ¶36 Tesoro argues that the Department's proposed reading of WAC 458-20-252(7)(b) violates the rule that tax laws should be intelligible to those expected to obey them. To support its argument, Tesoro contends that the "Department has for years advised Washington manufacturers that the [tax] did not apply to internally created and consumed hazardous substances." Reply Br. of Appellant at 17-18. Tesoro fails to cite to anything in the record supporting its contention that the Department has advised manufacturers that the tax did not apply. Accordingly, we do not address the argument. RAP 10.3(a)(4).

## D. Excise Tax Advisory 540.04.22.252 (ETA 540)

¶37 The Department published ETA 540 in 1988.[8] The Department withdrew ETA 540 in May 2005. Tesoro argues that ETA 540 establishes that refinery gas is exempted from the tax. ETA 540 refers only to former chapter 82.22 RCW (1987), the prior version of the tax law, which no longer exists. Former RCW 82.22.040(3)(d) (1987) exempted "liquid fuel or fuel gas used in petroleum processing" from the tax. The current version of the tax does not exempt liquid fuel or fuel gas used in petroleum processing; rather, chapter 82.21 RCW imposes the tax on the first possessor of hazardous substances. RCW 82.21.010, .030(1), .040. Thus, Tesoro's reliance on the repealed excise tax advisory is misplaced.

¶38 Affirmed.

PENOYAR, J., concurs.

¶39 QUINN-BRINTNALL, J. (concurring in part and dissenting in part) — I agree with that portion of the majority

---

[8] The Department initially published this document in 1988. When the Department published ETA 540, those publications were called Excise Tax Bulletins. So the Department's initial publication was technically ETB 540. In 1998, the Department converted ETB 540 to ETA 540. Tesoro's contention that the Department "reaffirmed and republished" ETA 540 is somewhat misleading. The Department merely converted ETB 540 into ETA 540.

opinion holding that Tesoro Refining and Marketing Company's power to use the hazardous substance created during the refinery process as fuel is a taxable possession under chapter 82.21 RCW.

¶40 But I respectfully dissent from that portion of the opinion suggesting that the Department of Revenue exceeded its statutory rulemaking authority by enacting WAC 458-20-252(7)(b) (rule 252) to exempt from taxation hazardous substances created and immediately consumed during the manufacturing process. *See* RCW 34.05.570(2)(c) (an agency rule is invalid if it exceeds the agency's statutory authority). Rule 252(7)(b) is clear and unambiguous. As the majority elaborates, one purpose of chapter 82.21 RCW is to prevent recurrent tax liability, but this purpose is not exclusive and, in my opinion, does not invalidate the plain meaning of rule 252(7)(b). Because the rule furthers the legislature's purpose and intent for the pollution tax (RCW 82.21.030) by exempting from taxation those hazardous substances not released into the environment but created and immediately consumed during the manufacturing process, we can give effect to and harmonize the statute and the rule. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 560, 14 P.3d 133 (2000) (stating the rule that appellate courts should consider and harmonize statutory provisions together to ensure proper construction); *S. Martinelli & Co. v. Dep't of Revenue*, 80 Wn. App. 930, 940 n.6, 912 P.2d 521 (noting that the rule of harmonization applies when the court interprets a tax statute together with an agency rule interpreting the statute), *review denied*, 130 Wn.2d 1004 (1996). In my opinion, reading rule 252(7)(b) together with chapter 82.21 RCW, Tesoro is responsible for the hazardous substance tax on the gas it flamed off into the atmosphere. But under rule 252(7)(b), Tesoro is entitled to a refund of taxes it paid on gas that was created and immediately recycled and consumed during the refining process.