[No. 79661-1.   En Banc.]
Argued January 24, 2008.   Decided August 14, 2008.

TESORO REFINING AND MARKETING COMPANY, *Petitioner*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

312

314

*George C. Mastrodonato* and *John B.K. Schochet* (of *Dorsey & Whitney, LLP*) and *Michael B. King* (of *Talmadge Law Group, PLLC*), for petitioner.

*Robert M. McKenna, Attorney General,* and *Anne E. Egeler, Senior Counsel,* and *Cameron G. Comfort, Senior Assistant,* for respondent.

*Garry G. Fujita* and *Michael R. Barr* on behalf of Western States Petroleum Association, amicus curiae.

*Kristopher I. Tefft* on behalf of Association of Washington Business, amicus curiae.

¶1 FAIRHURST, J. — Tesoro Refining and Marketing Company (Tesoro) seeks a refund from the Department of Revenue (DOR) for the hazardous substance tax (HST) it paid for refinery gas yielded at its Anacortes, Washington, refinery. Tesoro claims its possession of refinery gas is exempt from taxation because Tesoro uses the gas within the refinery for heat. We hold Tesoro's use of refinery gas as a heat source constitutes a taxable possession of hazardous substances. We affirm the Court of Appeals.

## I. FACTS AND PROCEDURAL HISTORY

¶2 Tesoro owns a refinery near Anacortes where it heats crude oil to extract salable products such as gasoline, jet and diesel fuel, propane, and asphalt. During the refining process, a highly combustible gas is continuously produced from the chemical reactions occurring within the refining units. The byproduct yielded from these reactions is called refinery gas. Although not amenable to storage or sale,

Tesoro collects the gas in a " 'fuel blend drum' " and then routes it to process heaters or boilers in the refinery. Clerk's Papers (CP) at 43, 280. Any refinery gas that cannot be used internally is consumed in a "controlled burn" or "flare" visible from outside of the refinery. CP at 160-61. The estimated time between the creation and consumption of refinery gas is 30 seconds.

¶3 Tesoro uses refinery gas to supply 75 percent of the heat necessary to run the refinery.[1] Some of the heat creates warmth for office space, but, generally, Tesoro uses refinery gas to heat crude oil. To borrow the trial court's analogy, Tesoro uses refinery gas in the same way as one would apply a gas flame underneath a tea kettle to boil water. Verbatim Report of Proceedings at 56. Instead of heating water in a tea kettle, refinery gas heats crude oil. The refinery gas never comes into contact with the crude oil it heats. Nor does the refinery gas undergo any further chemical reaction or otherwise become a component or ingredient of another product.

¶4 During an audit, DOR assessed Tesoro for failing to pay an HST on its refinery gas under RCW 82.21.030. The HST provides that "[a] tax is imposed on the privilege of possession of hazardous substances in this state." RCW 82.21.030(1). In 2003, Tesoro filed for a refund of the HST it paid on refinery gas between 1999 and June 2003. Tesoro argued it qualified for a tax exemption under WAC 458-20--252(7)(b) (Rule 252(7)(b)). Rule 252(7)(b) provides the possession of a hazardous substance consumed in the processing or manufacturing of the hazardous substance is not a taxable possession.

¶5 DOR denied the claim. Tesoro filed suit in Thurston County Superior Court against DOR to recover $937,889 for the HST it paid. The trial court granted DOR's motion for summary judgment and the Court of Appeals, Division Two, affirmed in a published, split opinion. *Tesoro Ref. & Mktg.*

---

[1] Natural gas makes up the balance of the refinery's heating needs, but it could not practicably supplant refinery gas.

*Co. v. Dep't of Revenue*, 135 Wn. App. 411, 144 P.3d 368 (2006). Both courts concluded Tesoro's possession of the refinery gas was a taxable incident under RCW 82.21.030. *Id.* at 414-15. The Court of Appeals denied Tesoro's motion for reconsideration leading to this petition for review, which we accepted. *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 161 Wn.2d 1022, 169 P.3d 830 (2007).

## II. ISSUES

A. Whether the HST applies to Tesoro's possession of refinery gas.

B. Whether Tesoro qualifies for a tax exemption under Rule 252(7)(b)

C. Whether DOR is attempting to repudiate an interpretive regulation.

## III. ANALYSIS

### *Standard of Review*

■■ ¶6 In a tax refund case, we review legal conclusions de novo. *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 148, 3 P.3d 741 (2000). We also apply de novo review to matters of statutory interpretation. *Burns v. City of Seattle*, 161 Wn.2d 129, 140, 164 P.3d 475 (2007).

A. Whether the HST applies to Tesoro's possession of refinery gas

■■ ¶7 The legislature designated " '[p]etroleum product[s],' " like refinery gas, as hazardous substances. RCW 82.21.020(1)(b). In Washington, possessing a hazardous substance is a privilege for which the first possessor must pay

a tax. RCW 82.21.010, .030(1).[2] Understanding the HST requires us to define a few key terms. " 'Possession' " means "control of a hazardous substance" within Washington, including "both actual and constructive possession." RCW 82.21.020(3). The essence of possession revolves around the idea of " '[c]ontrol,' " which is defined as "the power to sell or use a hazardous substance or to authorize the sale or use by another." *Id.* In short, having the power to sell or use a petroleum product gives rise to taxation under RCW 82.21.030, the HST.

¶8 Tesoro does not dispute that its refinery gas is a petroleum product and, therefore, a hazardous substance under chapter 82.21 RCW. Tesoro acknowledges it should pay an HST on the refinery gas flared into the atmosphere. However, Tesoro takes exception to the trial court's and the Court of Appeals' application of RCW 82.21.030 to the refinery gas used within the refinery.

¶9 Two opposing interpretative presumptions set the foundation for construing tax laws. First, where the language of a law assessing a tax is ambiguous, we construe the ambiguity against the taxing power and in favor of the taxpayer. *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396-97, 103 P.3d 1226 (2005). Second, the court inverts this presumption where the law enumerates a tax exemption. Any ambiguity in a tax exemption is construed fairly and in keeping with the ordinary meaning of the language against the taxpayer who bears the burden of proving the taxpayer qualifies for the exemption. *Simpson Inv. Co.*, 141 Wn.2d at 149-50.

¶10 The goal of statutory interpretation is to carry out the legislature's intent. *Burns*, 161 Wn.2d at 140. If the meaning of the statute is plain, the court discerns legislative intent from the ordinary meaning of the words. *Id.* Susceptibility to more than one reasonable interpretation renders the statute ambiguous and allows the court to

---

[2] The HST provides, "A tax is imposed on the privilege of possession of hazardous substances in this state. The rate of the tax shall be seven-tenths of one percent multiplied by the wholesale value of the substance." RCW 82.21.030(1).

employ tools of statutory construction such as legislative history to interpret the statute.[3] *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002). The mere fact that two interpretations are conceivable does not make a statute ambiguous. *Agrilink*, 153 Wn.2d at 396.

¶11 Tesoro asserts the word "or" in the definition of the term " '[c]ontrol' " as "the power to sell *or* use a hazardous substance or to authorize the sale *or* use by another" is ambiguous because it is unclear whether one should read the word "or" as disjunctive or conjunctive. RCW 82.21-.020(3)[4] (emphasis added). Relying on *State v. Keller*, 98

---

[3] Contrary to our established rules of statutory construction, the dissent relies on the legislative history of the HST to determine the HST is ambiguous. Dissent at 326-27. The problem with this approach is that it puts the proverbial cart before the horse. Our rules of statutory construction dictate we must look first to the plain meaning of the statute to determine whether it is ambiguous. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). Only after we determine the statute is ambiguous may we resort to tools of statutory construction like legislative history. *Id.* at 202. Resorting to such tools of statutory construction without first finding the statute is ambiguous is error. *Id.* (holding the Court of Appeals erred when it looked beyond the statutory language and related statutes to determine legislative intent "without first determining that the statute was ambiguous"). The dissent departs from this long-standing rule by first looking to the HST's legislative history to determine the plain language is ambiguous. Consequently, the dissent repeats the same error committed by the Court of Appeals in *Cerrillo*. The dissent's inverted analysis leads it to conclude the HST is ambiguous and, therefore, it erroneously construes the HST in Tesoro's favor.

The dissent also relies on the definition of "hazardous substance" and the statute heading to determine legislative intent. Neither of these sources indicates the legislature intended to tax only individuals who actually pollute. The dissent maintains, " 'Hazardous substance' is defined by four categories', each of which are substances and products that present a threat to human health or the environment *if released into the environment.*" Dissent at 327 (emphasis added). The language to which the dissent refers can be found in RCW 82.21.020(1)(d), not RCW 82.21.020(1)(b), which is the pertinent provision here. RCW 82.21.020(1)(b) categorizes petroleum products such as refinery gas as hazardous substances regardless of whether the product is released into the environment.

The dissent also relies on the title of RCW 82.21.030—"Pollution tax"—to conclude the HST targets polluters. Dissent at 327. However, "[h]eadings are added by the code reviser subsequent to enactment, as part of codification. RCW 44.20.050. They are of little use as a guide to the intent of the legislature." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 149 Wn.2d 660, 684 n.10, 72 P.3d 151 (2003). Similarly here, we should not rely on the title of the HST to override the intent of the legislature manifest in the plain language of the HST.

[4] In full, RCW 82.21.020(3) provides:

"Possession" means the control of a hazardous substance located within this state and includes both actual and constructive possession. "Actual possession"

Wn.2d 725, 729, 657 P.2d 1384 (1983), Tesoro claims the word "or" may be used interchangeably with the word "and." It follows, Tesoro argues, that the HST does not apply to Tesoro because it lacks the power to sell refinery gas.

¶12 Tesoro labors under a misapprehension of the rule from *Keller*. The court recognized the propriety of substituting the word "and" with the word "or" where doing so furthers legislative intent. *Id.* As a default rule, the word "or" does not mean "and" unless legislative intent clearly indicates to the contrary. *HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.*, 148 Wn.2d 451, 473 n.95, 61 P.3d 1141 (2003). We assess the plain meaning of a statute "viewing the words of a particular provision in the context of the statute in which they are found, together with related statutory provisions, and the statutory scheme as a whole." *Burns*, 161 Wn.2d at 140 (citing *Campbell & Gwinn*, 146 Wn.2d at 11). We also consider the subject, nature, and purpose of the statute as well as the consequences of adopting one interpretation over another. *Id.* at 146.

¶13 Tesoro argues the word "or" in the HST means "and" when one reads the HST in the context of the HST's purpose and Rule 252(7)(b). Twin purposes underlie the HST. First, the legislature sought to tax the first possession of all products designated hazardous substances by the Department of Ecology. RCW 82.21.010. Second, the legislature intended to tax the possession only once.[5] *Id.* Neither

---

occurs when the person with control has physical possession. "Constructive possession" occurs when the person with control does not have physical possession. "Control" means the power to sell or use a hazardous substance or to authorize the sale or use by another.

[5] The dissent concludes, "In light of the clear legislative intent—*to tax polluters*—it is reasonable to interpret 'or' in the definition of 'control' in the conjunctive. Because this definition is ambiguous, the rule of construction applicable in these circumstances requires resolution of the ambiguity in favor of Tesoro." Dissent at 328 (emphasis added). The dissent's assertion ignores the plain language of the HST's statement of intent. "It is the intent of this chapter to impose a tax only once for each hazardous substance possessed in this state and *to tax the first possession of all hazardous substances, including substances and products the department of ecology determines to present a threat to human*

of these purposes indicates that the legislature desired to narrow the scope of taxable possessions to persons with the power to both sell *and* use the hazardous substance. We reach the same conclusion when we examine Rule 252(7)(b).

¶14 WAC 458-20-252(7) reiterates that hazardous substances shall incur taxation only once: "It is the intent of the law that all hazardous substances possessed in this state should incur this tax liability only once unless they are expressly exempt." Under Rule 252(7)(b), a taxable possession does not occur where the refining process creates an intermediate product that is a hazardous substance and "if the substance[ ] becomes a component or ingredient of the product being manufactured or processed or is otherwise consumed during the manufacturing or processing activity." Considering the overarching purpose of WAC 458--20-252(7), this regulation delineates *when* the hazardous substance will be taxed in the refining process so as to avoid double taxation. WAC 458-20-252(7) does not evidence legislative intent to require a refiner to be able to both use *and* sell refinery gas before DOR may assess an HST.

¶15 Neither Rule 252(7)(b) nor the purpose of the HST compels the court to read the word "or" in the definition of " '[c]ontrol' " as conjunctive, and, therefore, we do not strain to do so. The fact Tesoro conceived of an alternative interpretation of RCW 82.21.020 fails to render the statute ambiguous. The word "or" in the definition of " '[c]ontrol' " is not susceptible to multiple reasonable interpretations—it is clearly disjunctive. We hold RCW 82.21.030 is plain on its face and therefore the Court of Appeals did not err because the statute lacked any ambiguity to construe in Tesoro's favor.

---

health or the environment." RCW 82.21.010. Conspicuously missing from both the statement of intent and the definition of "control" is any reference to taxing only those individuals who actually pollute. The dissent correctly observes the legislature chose to tax the possession of substances that pose a threat to human health or the environment *"if* released into the environment." Dissent at 327 (emphasis added). This observation underscores the legislature's intent to tax those who have the ability to sell or use substances with the *potential* of harming human health or the environment. However, the dissent disregards the plain language of the statute by narrowing its scope to tax those who actually pollute. *Id.* at 327-28.

¶16 Tesoro and amicus, Association of Washington Business (AWB), next argue the legislature could not have intended to impose a tax on an ephemeral substance like refinery gas. The AWB asserts Tesoro does not exercise "legally significant control" over the refinery gas. Br. of Amicus Curiae AWB at 2. The Court of Appeals properly rejected this argument, noting RCW 82.21.030 does not specify a length of time the taxpayer must possess refinery gas. *Tesoro*, 135 Wn. App. at 419-20. Rather, the statute focuses on whether the taxpayer has the power to sell or use the hazardous substance. RCW 82.21.030. The fact Tesoro uses refinery gas contradicts the argument that Tesoro lacks sufficient control over refinery gas to fall within RCW 82.21.030. We affirm the Court of Appeals finding that the definition of "possession" does not implicate a temporal requirement.

B. Whether Tesoro qualifies for a tax exemption under Rule 252(7)(b)

¶17 Tesoro argues the plain language of Rule 252(7)(b) exempts its refinery gas from the HST. Rule 252(7)(b) provides:

> When any hazardous substance(s) is first produced during and because of any physical combination or chemical reaction which occurs in a manufacturing or processing activity, the intermediate possession of such substance(s) within the manufacturing or processing plant is not considered a taxable possession if the substance(s) becomes a component or ingredient of the product being manufactured or processed *or is otherwise consumed during the manufacturing or processing activity.*

(Emphasis added.)

¶18 Tesoro claims its refinery gas is "otherwise consumed during the manufacturing or processing activity" because it is used within the factory. *Id.* The Court of Appeals found to the extent Rule 252(7)(b) created a tax exemption for refinery gas that did not otherwise exist, it was void. *Tesoro*, 135 Wn. App. at 426.

¶19 The rules of statutory construction apply to agency regulations as well as statutes. *Mader v. Health Care Auth.*, 149 Wn.2d 458, 472, 70 P.3d 931 (2003). The language of an unambiguous regulation is given its plain and ordinary meaning unless legislative intent indicates to the contrary. *Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 47, 169 P.3d 473 (2007). The court may consider statutes related to the regulation to discern the regulation's plain meaning. *Mader*, 149 Wn.2d at 473.

¶20 The stated purpose of chapter 82.21 RCW is to tax the first possession of hazardous substances in the state of Washington. RCW 82.21.010. The Department of Ecology determined all petroleum products, including refinery gas, are hazardous substances. The HST is premised upon the mere act of possessing a hazardous substance. Therefore, the fact Tesoro possesses refinery gas gives rise to taxation. Consumption of refinery gas within Tesoro's refinery walls does not change the fact that it possesses the gas and therefore should pay the HST.[6]

---

[6] The dissent contends Tesoro should not pay an HST on the refinery gas it uses inside of the factory but should pay an HST on the gas disposed of in the refinery flare. Dissent at 326. The dissent operates under an unsubstantiated assumption that Tesoro's use of the refinery gas inside of the refinery "does not pollute" and somehow poses less of an environmental threat than the refinery gas flared outside of the refinery. *Id.* However, the record shows Tesoro consumes all refinery gas in essentially the same manner—by burning it. CP at 43, 259. Tesoro diverts the refinery gas to heaters where the refinery gas is burned to create heat. CP at 161. The excess refinery gas is piped to the refinery flare where it is also burned. CP at 159-60. According to the refinery manager, refinery gas does not "leave the premises." CP at 259. Therefore, the processes by which Tesoro burns its refinery gas inside and outside of the refinery are virtually identical except for the location of the burning. Further, there is nothing in the record that proves or even suggests Tesoro's use of refinery gas within its refinery constitutes a "clean" or nonpolluting use.

It is important that we keep in mind the legislature chose to tax the *possession* of hazardous substances, which it defines as the ability to sell or use a hazardous substance. RCW 82.21.030. The statute does not differentiate between the type of use—polluting or nonpolluting. Rather, the statute focuses on the modicum of control the individual can exert over the hazardous substance. Here, Tesoro harnesses the combustion power of the refinery gas to fuel its refinery and flares off the excess. Tesoro not only has the power to use the refinery gas, it does in fact use the refinery gas, and this, therefore, falls squarely within the scope of the HST.

¶21 We must construe the phrase "otherwise consumed during the manufacturing or processing activity" from Rule 252(7)(b) in context and not in isolation. *City of Seattle v. Allison*, 148 Wn.2d 75, 81, 59 P.3d 85 (2002). The phrase "or is otherwise consumed during the manufacturing or processing activity" follows the words "becomes a component or ingredient of the product being manufactured or processed." Rule 252(7)(b). Both of the words "component" and "ingredient" imply the hazardous substance is integrated into another product. The word "consumed" takes on a similar connotation and means the hazardous substance is somehow integrated into another product. Refinery gas is not integrated into another product, nor does it come into contact with the crude oil. Refinery gas is a byproduct of the refining process Tesoro uses as an independent heating agent. The legislature made it plain that the use of hazardous substances like refinery gas incurs taxation. RCW 82.21.010, .030.

¶22 Read in isolation, Tesoro posits a plausible reading of Rule 252(7)(b) as a tax exemption for Tesoro's refinery gas. However, we read Rule 252(7)(b) in the context of the HST to carry out the legislature's intent to tax the possession of refinery gas. We hold Tesoro's refinery gas is not consumed in the refining or manufacturing process as described in Rule 252(7)(b) and therefore incurs taxation under the HST.

C. *Whether DOR is attempting to repudiate an interpretive regulation*

¶23 Tesoro alleges DOR is repudiating its interpretation of Rule 252(7)(b) contained in Excise Tax Advisory 540.04.22.252 (ETA 540). ETA 540 states that "Export Refinery Fuel Gas [is] entitled to the exemptions of the hazardous substance tax when used by the refiner in further processing petroleum, i.e., burned in the refinery plant." CP at 71. A government agency may not repudiate one of its own regulatory interpretations after a third party has relied upon it to their detriment. *Silverstreak, Inc. v.*

*Dep't of Labor & Indus.*, 159 Wn.2d 868, 889, 154 P.3d 891 (2007); *see also Group Health Coop. of Puget Sound, Inc. v. Wash. State Tax Comm'n*, 72 Wn.2d 422, 428, 433 P.2d 201 (1967) (holding it improper for the tax commission to retroactively assess the taxpayer for business and occupation taxes after it erroneously advised the taxpayer to the contrary); *Hansen Baking Co. v. City of Seattle*, 48 Wn.2d 737, 743-44, 296 P.2d 670 (1956) (holding the city of Seattle accountable for tax guidance contained in an administrative ruling sent by letter to the taxpayer). However, this is not a case of repudiation but rather an instance of an agency observing that its interpretive statement has been superseded by a statute.

¶24 Tesoro relies, in part, on ETA 540 to prove that its refinery fuel gas is tax exempt. However, the guidance contained in ETA 540 is outdated. Originally published in 1988, ETA 540 addressed the scope of the HST as codified in Rule 252(7)(b) and former chapter 82.22 RCW. ETA 540 cautions that the excise tax authority is binding on DOR "until superseded by Court action, Legislative action, rule adoption, or an amendment to or cancellation of the ETA." CP at 70. Chapter 82.21 RCW superseded chapter 82.22 RCW in 1989 and explicitly struck the exemption for refinery gas. *See* former RCW 82.22.040(3)(e) (1987); *contra* RCW 82.21.040(3) ("This exemption does not apply to . . . petroleum products."). Tesoro's interpretation of Rule 252(7)(b), based in part on ETA 540, conflicts with current chapter 82.21 RCW.

¶25 Regulations that are inconsistent with statutes are void. *Dep't of Labor & Indus. v. Granger*, 159 Wn.2d 752, 764, 153 P.3d 839 (2007). A third party may not rely upon a void regulation. *See Campbell & Gwinn*, 146 Wn.2d at 20 n.10 ("Equitable estoppel does not apply when the acts of a governmental body are ultra vires and void." (citing *State v. Adams*, 107 Wn.2d 611, 615, 732 P.2d 149 (1987))). Tesoro advocates for an outdated interpretation of Rule 252(7)(b) that is inconsistent with the HST by creating a tax exemption not found in statute. Such a reading of Rule 252(7)(b)

would render the regulation ultra vires and void. By disputing Tesoro's argument, DOR is not attempting to repudiate its own regulation. Rather, DOR is contesting Tesoro's attempt to revive an interpretation of Rule 252(7)(b) made obsolete by chapter 82.21 RCW. Therefore, Tesoro's repudiation argument lacks merit.

## IV. CONCLUSION

¶26 We hold RCW 82.21.030 unambiguously assesses a tax on the privilege of possessing refinery gas. We also hold Rule 252(7)(b), when read in context of RCW 82.21.010 and .030, does not provide a tax exemption for the use of refinery gas as a heat source within a refinery. We affirm the Court of Appeals.

MADSEN, OWENS, and STEPHENS, JJ., concur.

¶27 ALEXANDER, C.J. (concurring) — I agree with the majority that the hazardous substance tax (HST), which is imposed pursuant to RCW 82.21.030 on possession of hazardous substances, applies to Tesoro Refining and Marketing Company's "use of refinery gas as a heat source." Majority at 314. I disagree, though, with the majority's conclusion that "Tesoro's refinery gas is not consumed in the refining or manufacturing process as described in Rule 252(7)(b)." Id. at 323. In my view, Tesoro's refinery gas is consumed during the manufacturing process and, thus, according to that rule, is exempt from the HST.

¶28 I, nevertheless, join in the result the majority reaches because I agree with the Court of Appeals that to the extent WAC 458-20-252(7)(b) is inconsistent with the statute imposing the HST, it is void and of no force or effect. Although there is a certain unseemliness about the Department of Revenue disavowing its own regulation when it appears to favor the taxpayers, the "bottom line" is that a statute trumps a regulation that conflicts with that statute.

¶29 C. JOHNSON, J. (dissenting) — The majority misconstrues the purpose underlying the hazardous substance tax (HST) and consequently misinterprets the meaning of "taxable possession." In doing so, the majority disregards the Department of Revenue's (DOR) own interpretation of "taxable possession" and mistakenly concludes that Tesoro Refining and Marketing Company is responsible for tax on refinery gas it recycles and uses in its process and, importantly, does not pollute.

¶30 Tesoro correctly acknowledges that it should pay HST on the refinery gas flared into the atmosphere.[7] Tesoro should not, however, have to pay HST on the refinery gas it does not vent off, but rather *recycles* and consumes as a heating source to run operations within its Anacortes refinery walls. This conclusion is supported by the statutory scheme and intent of chapter 82.21 RCW, which also is consistent with the DOR-created exemption in WAC 458--20-252(7)(b) (Rule 252(7)(b)).

¶31 RCW 82.21.020(3) defines " '[p]ossession' " in terms of control, stating that " '[c]ontrol' means the power to sell or use a hazardous substance or to authorize the sale or use by another." No dispute exists that Tesoro consumes refinery gas in its process but lacks the ability to sell *and* use the refinery gas. The question in this case is whether such gas is subject to the HST.

¶32 The majority acknowledges that ordinarily, the word "or" does mean "and" *unless there is clear legislative intent to the contrary*. Here, there is clear legislative intent to the contrary that supports reading the word "or" in RCW 82.21.020(3) as "and." A party may not have the power to sell and use a hazardous substance but, like Tesoro, may have the power to use. Simple use may not result in pollution and so does not accord with the clear legislative intent of the HST: to tax those who pollute.

---

[7] Whereas the majority of refinery gas is utilized as a heating source within the refinery, in the flaring process, excess refinery gas is burned over an exposed pilot light outside the refinery. Clerk's Papers (CP) at 160. This latter process creates emissions, which in turn, raises regulatory concerns. CP at 167-68.

¶33 The intent to tax polluters is apparent throughout the statutory scheme of chapter 82.21 RCW, which was enacted as part of Initiative Measure 97 (I-97). I-97 adopted a hazardous waste cleanup program partially funded by a tax on possession of hazardous substances. The intended result was to have polluters bear the burden of cleanup. Indeed, throughout the statement for approval of I-97 contained in the voter's pamphlet is discussion aimed at making polluters pay, forcing polluters to clean up their wastes, and creating a stronger toxic cleanup program to make the environment cleaner and safer. *See 1988 Voters & Candidates Pamphlet, General Election,* Initiative Measure 97, at 6 (Wash. Nov. 8, 1988).

¶34 Intent to target polluters is further evident in the definition of " '[h]azardous substance' " in RCW 82.21.020(1). "Hazardous substance" is defined by four categories, each of which are substances and products that present a threat to human health or the environment if released into the environment. *See, e.g.,* RCW 82.21.020(1)(a) (categorizing "hazardous substance" according to federal statute 42 U.S.C. § 9602, which defines "hazardous substance" as air pollutants and substances that when discharged present an imminent and substantial danger to the public health or welfare or the environment). Moreover, section titles in chapter 82.21 RCW refer to the tax itself as the "pollution tax."

¶35 Tesoro and amicus curiae Association of Washington Business correctly conclude that the definition of a "taxable possession" is subject to more than one reasonable construction. It is reasonable to interpret "or" in the definition of "control" in the conjunctive because it furthers the legislative intent. As the majority recognizes, the rule of construction of tax laws requires us to resolve any ambiguity in favor of the taxpayer. Therefore, ambiguity in defining taxable possession should be resolved in Tesoro's favor. Yet, the majority ignores this principle and expands the scope of the statute to include substances that do not fall within the aim of the statute.

¶36 At the Court of Appeals, Judge Quinn-Brintnall correctly observed in her concurrence/dissent that Rule 252(7)(b) exempts from taxation hazardous substances that become a component or ingredient of the product being manufactured or processed or that are otherwise consumed during the manufacturing or processing activity. *Tesoro Ref. & Mktg. Co.v. Dep't of Revenue*, 135 Wn. App. 411, 429, 144 P.3d 368 (2006) (Quinn-Brintnall, J., concurrence/dissent). In other words, under this rule the DOR recognized that the statute exempts from taxation instances where the hazardous substance is not being released into the environment. While flaring off refinery gas does not fall within this exemption, recycling refinery gas to run operations within Tesoro's refinery walls plainly does. Thus, Rule 252(7)(b) recognizes an exemption for nonpolluting activities that applies to the facts of this case. This exemption is consistent with the statutory purpose as well as reading "or" as "and" in RCW 82.21.020(3).[8]

¶37 In light of the clear legislative intent—to tax polluters—it is reasonable to interpret "or" in the definition of "control" in the conjunctive. Because this definition is ambiguous, the rule of construction applicable in these circumstances requires resolution of the ambiguity in favor of Tesoro. For these reasons, I dissent.

SANDERS, CHAMBERS, and J.M. JOHNSON, JJ., concur with C. JOHNSON, J.

Reconsideration denied December 18, 2008.

---

[8] There is unfairness in the majority's conclusion in light of the DOR's rule. The DOR is authorized under RCW 82.32.300 to prescribe rules for the collection of taxes. Rule 252(7)(b) is one such rule, adopted in furtherance of administering the pollution tax. While the DOR concedes that the rule may create an extra-statutory exemption from the HST, it asserts that any exemption would be per se invalid. The DOR has not, however, gone through any procedure to repeal or amend the rule on this basis.